# 21-1446

---

## United States Court of Appeals for the Second Circuit

---

STATE OF CONNECTICUT, by its Attorney General, WILLIAM M. TONG,

*Plaintiff-Appellee,*

v.

EXXON MOBIL CORPORATION,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Connecticut District of New York

---

## BRIEF FOR AMICI STATES

---

BARBARA D. UNDERWOOD
  *Solicitor General*
STEVEN C. WU
  *Deputy Solicitor General*
MATTHEW W. GRIECO
  *Assistant Solicitor General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Amici States
28 Liberty Street
New York, New York 10005
(212) 416-8014

Dated: November 12, 2021

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

INTERESTS OF AMICI CURIAE ...................................................... 1

ARGUMENT .................................................................................... 4

POINT I

PROTECTING CONSUMERS FROM DECEPTIVE COMMERCIAL
CONDUCT IS A TRADITIONAL ROLE OF STATE LAW AND STATE
GOVERNMENT ENFORCEMENT ACTIONS ..................................... 5

POINT II

EXXONMOBIL'S REMOVAL ARGUMENTS IGNORE THE CLAIMS
CONNECTICUT ACTUALLY RAISES AND WOULD UNDERMINE
STATES' SOVEREIGN AUTHORITY TO ENFORCE THEIR LAWS .................. 10

A.  Connecticut's Claims Do Not Arise Under Federal Law
    Because the Claims Address ExxonMobil's Deceptive
    Marketing and Not Its Emissions. ........................................ 10

    1.  Connecticut's claims do not regulate emissions.............. 11

    2.  Principles of federalism counsel in favor of keeping
        Connecticut's claims in state court. ............................... 17

B.  A State Court Need Not Decide Any Substantial Federal
    Issue to Conclude That ExxonMobil Lied About the
    Causes and Severity of Climate Change. .............................. 20

C.  ExxonMobil's Ties to Federal Officers and to the Outer
    Continental Shelf Cannot Support Removal Because
    They Are Unrelated to the Conduct Challenged Here........... 22

CONCLUSION .................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Beneficial Nat'l Bank v. Anderson*,
539 U.S. 1 (2003) ............................................................... 19

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ........................................................... 17

*Board of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*,
405 F. Supp. 3d 947 (D. Colo. 2019) ............................ 13, 27

*California v. ARC Am. Corp.*,
490 U.S. 93 (1989) ............................................................... 5

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987) ................................................... 4, 9, 19

*Central Iowa Power Coop. v. Midwest Indep. Transmission
Sys. Operator, Inc.*,
561 F.3d 904 (8th Cir. 2009) ........................................... 20

*City of New York v. Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021) ...................................... passim

*City of Oakland v. BP p.l.c.*,
960 F.3d 570 (9th Cir. 2020) ........................................... 13

*County of San Mateo v. Chevron Corp.*,
294 F. Supp. 3d 934 (N.D. Cal. 2018) ................... 13, 21, 22

*Edenfield v. Fane*,
507 U.S. 761 (1993) ...................................................... 5, 18

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) ........................................................... 20

*In re Deepwater Horizon*,
745 F.3d 157 (5th Cir. 2014) ....................................... 26-27

| Cases | Page(s) |
|---|---|

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  MDL No. 2672, 2017 WL 2258757 (N.D. Cal. May 23, 2017) .......... 7, 9

*Isaacson v. Dow Chem. Co.*,
  517 F.3d 129 (2d Cir. 2008) ............................................................. 23

*Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*,
  338 Conn. 189 (2021) ......................................................................... 9

*Massachusetts v. Exxon Mobil Corp.*,
  462 F. Supp. 3d 31 (D. Mass. 2020) ...................................... 13, 24, 25

*Massachusetts v. Fremont Inv. & Loan*,
  No. 07-cv-11965, 2007 WL 4571162 (D. Mass. Dec. 26, 2007) ............. 6

*Mayor & City Council of Baltimore v. BP p.l.c.*,
  388 F. Supp. 3d 538 (D. Md. 2019) .................................................... 13

*Mayor & City Council of Baltimore v. BP p.l.c.*,
  952 F.3d 452 (4th Cir. 2020) ....................................................... 24, 25

*McKesson v. Doe*,
  141 S. Ct. 48 (2020) ......................................................................... 18

*Metropolitan Life Ins. Co. v. Taylor*,
  481 U.S. 58 (1987) ........................................................................... 11

*Miller v. Guimaraes*,
  78 Conn. App. 760 (2003) ................................................................... 9

*New York ex rel. Schneiderman v. Charter Commc'ns, Inc.*,
  No. 17-cv-1428, 2017 WL 1755958 (S.D.N.Y. Apr. 27, 2017) ......... 8, 10

*New York v. Shinnecock Indian Nation*,
  686 F.3d 133 (2d Cir. 2012) ....................................................... 11, 17

*North Carolina ex rel. Stein v. Tinted Brew Liquid Co.*,
  No. 19-cv-886, 2019 WL 5839184 (M.D.N.C. Nov. 7, 2019) .............. 7-8

**Cases**                                                        **Page(s)**

*Peters v. Alaska Tr., LLC,*
    305 F. Supp. 3d 1019 (D. Alaska 2018) ............................................... 22

*Rhode Island v. Chevron Corp.,*
    393 F. Supp. 3d 142 (D.R.I. 2019) ....................................................... 13

*Rhode Island v. Shell Oil Prods. Co.,*
    979 F.3d 50 (1st Cir. 2020) ................................................................ 24

*Tantaros v. Fox News Network, LLC,*
    12 F.4th 135 (2d Cir. 2021)........................................................... 20, 21

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.,*
    550 U.S. 330 (2007)............................................................................. 1

*Washington v. Monsanto Co.,*
    274 F. Supp. 3d 1125 (W.D. Wash. 2017)........................................... 26

*West Virginia ex rel. Morrisey v. McKesson Corp.,*
    No. 16-cv-1772, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2017) ............. 6

**Laws**

28 U.S.C. § 1442 ...................................................................................... 23

43 U.S.C. § 1349 ...................................................................................... 26

Conn. Gen. Stat. Ann. § 42-110b......................................................... 2, 9

**Miscellaneous Authorities**

Master Settlement Agreement Between States and Tobacco
    Manufacturers (1998),
    https://www.publichealthlawcenter.org/sites/default/files/r
    esources/master-settlement-agreement.pdf ...................................... 15

## INTERESTS OF AMICI CURIAE

Amici are the States of New York, Delaware, Hawaiʻi, Maryland, Massachusetts, Minnesota, New Jersey, New Mexico, Oregon, Pennsylvania, Rhode Island, Washington, Wisconsin, and the District of Columbia.[1] Amici States have an interest in preserving the authority of their state legislatures to enact state causes of action enforceable against corporate entities, and the authority of their state courts to enforce those statutory causes of action and to develop and enforce state common law. States are "vested with the responsibility of protecting the health, safety, and welfare of [their] citizens." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342 (2007).

Here, Connecticut sued ExxonMobil, a company that sells fossil fuels such as gasoline, under the Connecticut Unfair Trade Practices Act (CUTPA). Connecticut's complaint alleges a familiar form of consumer deception: a company's public representations that it knows are false. Specifically, the complaint alleges that ExxonMobil scientists determined many decades ago that emissions from fossil fuels are dangerously

---

[1] As States, amici file this brief as of right under Rule 29(a)(2) of the Federal Rules of Appellate Procedure.

warming the planet, but ExxonMobil regularly published statements urging consumers to doubt any link between emissions and warming. ExxonMobil published these statements—which it knew were untrue based on its own scientists' research—because the company feared that growing consumer understanding of the science of anthropogenic (human-caused) climate change would decrease demand for ExxonMobil's products and reduce its revenue. In short, Connecticut alleges a classic consumer deception claim that falls well within CUTPA, *see* Conn. Gen. Stat. Ann. § 42-110b, and well within the States' traditional authority to prevent unfair trade practices.

The district court rightly concluded that a defendant is not entitled to have such a state-law claim heard in a federal forum simply because the subject matter of a defendant's false or deceptive commercial statements is an issue that has national or international dimensions in addition to local dimensions—such as climate change. Removability depends upon the *causes of action* that the plaintiff actually asserts, not the topics a company's false or deceptive statements might implicate.

Connecticut's claims do not seek to regulate emissions and thus would not present a federal question even if ExxonMobil is correct that

any regulation of emissions arises under federal common law. Nor would a court determine any issue of climate-change policy to award relief to Connecticut; a court need only find that ExxonMobil engaged in unfair, unethical, or unscrupulous market conduct (such as deceptive statements). And ExxonMobil's notice of removal fails to demonstrate that it engaged in any deception of consumers at the direction of a federal officer or agency, or in connection with its activities on the outer continental shelf.

Accepting ExxonMobil's arguments here would significantly harm Amici States' sovereign interests in developing and enforcing their own state laws and would expand removal jurisdiction well beyond what the Supreme Court and this Court have allowed. Courts have consistently remanded state-law actions that were removed on the ground that they touch upon issues with national dimensions. Here too, this Court should affirm the district court's order returning Connecticut's claims to state court, where they belong.

# ARGUMENT

Removal jurisdiction is governed by the "well-pleaded complaint rule," "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The plaintiff is "the master of the claim," and "may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

Connecticut brought this case under a single provision of its own state law—CUTPA—and ExxonMobil fails to show that any exception to the well-pleaded complaint rule applies. As the district court correctly reasoned, Connecticut's sole claim is that ExxonMobil's made deceitful statements and engaged in unfair business practices. (Joint Appendix (JA) 223.) ExxonMobil's arguments ignore the state-law nature of the claims that Connecticut actually pleaded and instead rely upon rewriting Connecticut's claims so that ExxonMobil can obtain a forum it prefers.

## POINT I

**PROTECTING CONSUMERS FROM DECEPTIVE COMMERCIAL CONDUCT IS A TRADITIONAL ROLE OF STATE LAW AND STATE GOVERNMENT ENFORCEMENT ACTIONS**

Among the longstanding, important roles of a State is consumer protection. In particular, prevention of unfair business practices and consumer deception is "an area traditionally regulated by the States." *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989). A State's "interest in ensuring the accuracy of commercial information in the marketplace is substantial." *Edenfield v. Fane*, 507 U.S. 761, 769 (1993). Connecticut's claims fall well within this established state role.

States have long engaged in consumer protection actions with respect to issues that also have national and international dimensions—and courts have regularly rejected attempts to remove such matters to federal court. For example:

• State enforcement actions were critical to revealing the scope of the subprime mortgage lending practices that contributed to the global 2008 financial crisis. In one representative case, Massachusetts brought an action in its state courts alleging unfair or deceptive practices under the Massachusetts Consumer Protection Act. The defendant bank

justified removal on the ground that a cease-and-desist order from the Federal Deposit Insurance Corporation limited the relief available to the State, but the district court remanded the action. *See Massachusetts v. Fremont Inv. & Loan*, No. 07-cv-11965, 2007 WL 4571162 (D. Mass. Dec. 26, 2007).

• States have relied on their own laws regarding consumer protection and controlled substances to combat the ongoing prescription drug abuse crisis, a national problem. West Virginia brought one such action against a pharmaceutical company in state court, alleging that the State had been forced to expend substantial amounts of money to deal with the consequences of the company's practices regarding its highly addictive drugs. The claims were based on West Virginia's laws regarding consumer protection, deceptive practices, unjust enrichment, and controlled substances. The defendant company justified removal on the ground that West Virginia's state-law claims made numerous references to the defendants' violation of federal law, but the district court remanded the action. *See West Virginia ex rel. Morrisey v. McKesson Corp.*, No. 16-cv-1772, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2017).

• Twelve States sued Volkswagen in their respective state courts for using "defeat devices" to evade Environmental Protection Agency (EPA) emissions test procedures. In multi-district litigation, Volkswagen justified removal on the ground that the concept of a "defeat device" was defined by federal law and that the cases would require the court to construe EPA emission regulations. In granting the States' motions to remand, the district court noted that proving a federal emissions violation was not an element of any State's claim; instead, the cases were about whether Volkswagen had deceived consumers about the characteristics of its cars in violation of each State's applicable laws. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672, 2017 WL 2258757 (N.D. Cal. May 23, 2017).

• States have taken action to prevent the deceptive and misleading practices that lead to the sale of tobacco products, such as e-cigarettes, to minors. North Carolina brought such a case in its state court based on its deceptive practices law and age-verification law. The defendant justified removal on the ground that the State's cause of action was completely subsumed by the Family Smoking Prevention and Tobacco Control Act, but the court remanded the action. *See North Carolina ex rel. Stein v.*

*Tinted Brew Liquid Co.*, No. 19-cv-886, 2019 WL 5839184 (M.D.N.C. Nov. 7, 2019).

• States have sued to protect their residents from unfair practices by communications providers, many of which are also federally regulated. New York sued Internet service providers for promising customers reliable service and Internet speeds that the providers knew they would not be able to deliver. New York relied on state-law claims of fraud, deceptive business practices, and false advertising. The defendants justified removal on the grounds that the case necessarily raised a federal question—specifically, about the application of Federal Communications Commission regulations—but the court remanded the action. *See New York ex rel. Schneiderman v. Charter Commc'ns, Inc.*, No. 17-cv-1428, 2017 WL 1755958 (S.D.N.Y. Apr. 27, 2017).

In each of these areas, state governments took enforcement actions that relate to national interests or even implicate specific federal statutes. But the district courts found no impediment to state-court jurisdiction because the claims were classic state-law causes of action and fell within no exception to the well-pleaded complaint rule, which allows a plaintiff

to choose its own claims and its own forum. *See Caterpillar, Inc.*, 482 U.S. at 392-93.

The district court was correct to reach the same result here. CUTPA makes it illegal to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a). Market conduct violates CUTPA if it is deceptive in the form of a material misrepresentation, *see Miller v. Guimaraes*, 78 Conn. App. 760, 775 (2003), or is unfair in that it offends public policy, is "immoral, unethical, oppressive, or unscrupulous," or has caused "substantial injury" to the plaintiff, *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*, 338 Conn. 189, 232 (2021) (quotation marks omitted).

Invoking CUTPA, Connecticut seeks to hold ExxonMobil accountable for making false representations about the nature of the fuels it sells—representations that caused consumers to underestimate the extent to which fossil fuel consumption causes climate change and its attendant harms. Connecticut's claims are comparable to the twelve States' suit to hold Volkswagen accountable for "deceptive representations about the environmental characteristics of its cars," *In re Volkswagen,* 2017 WL 2258757, at *11, or New York's suit to hold Internet service providers

accountable for promising service it could not provide, *Charter Commc'ns, Inc.*, 2017 WL 1755958, at *8-9. The existence of important federal laws relating to climate change, such as the Clean Air Act, does not alter the state-law nature of Connecticut's claim here or provide any other basis for removal.

## POINT II

### EXXONMOBIL'S REMOVAL ARGUMENTS IGNORE THE CLAIMS CONNECTICUT ACTUALLY RAISES AND WOULD UNDERMINE STATES' SOVEREIGN AUTHORITY TO ENFORCE THEIR LAWS

ExxonMobil's brief offers four theories for removal. None provides a valid basis for preventing States from fulfilling their traditional role of enforcing laws against consumer deception and other unfair trade practices.

### A. Connecticut's Claims Do Not Arise Under Federal Law Because the Claims Address ExxonMobil's Deceptive Marketing and Not Its Emissions.

ExxonMobil primarily argues (Br. for Appellant (Br.) at 10) that federal courts have jurisdiction over any claim arising from energy companies' role in climate change—regardless of the causes of action that actually appear on the face of a State's well-pleaded complaint—because such claims inherently regulate an area reserved to the federal govern-

10

ment. ExxonMobil is wrong, and its argument rewrites Connecticut's complaint to raise claims it simply does not raise.

## 1. Connecticut's claims do not regulate emissions.

For a case to be removable based on the existence of a federal question, "a right or immunity created by the Constitution or laws of the United States" must be an "essential element of the *cause of action*." *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (emphasis added and alteration marks omitted). Any potential *defenses* to the causes of action in a complaint do not bear on removability, even if "the complaint anticipates a potential federal defense," and "even if the parties concede that the defense is the only disputed issue in the case." *Id.* (citing *Caterpillar, Inc.*, 482 U.S. at 393). Federal preemption is a defense that "does not appear on the face of a well-pleaded complaint, and therefore, does not authorize removal to federal court." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

Absent from Connecticut's complaint is any effort to regulate greenhouse gas emissions from combustion of Exxon's products. The lawsuit simply does not target emissions. Nor does it target companies unconnected to Exxon's false and deceptive statements. Connecticut's

complaint is against one company for specific false and deceptive commercial statements.

ExxonMobil nevertheless insists that Connecticut's claims "concern the regulation of air and water in their ambient or interstate aspects," and are therefore removable. Br. at 10. ExxonMobil raises the specter that if this Court affirms the remand order, "energy companies and emissions sources would be subjected to a patchwork of non-uniform state-law standards, and States would be empowered to regulate extraterritorially and in areas reserved for the federal government." *Id.* at 10-11. That fear is unjustified. There is nothing in Connecticut's complaint that seeks to limit emissions within Connecticut, let alone in other States. As the district court correctly explained, "[t]he fact that [ExxonMobil's] alleged lies were about the impacts of fossil fuels on the Earth's climate does not empower the court to rewrite the Complaint and substitute other claims" for those that Connecticut actually asserted in its complaint. (JA 224 (emphasis omitted).)

ExxonMobil chiefly relies (*see* Br. at 10) on this Court's decision in a case where New York City brought causes of action for nuisance and trespass against ExxonMobil and two other oil companies in federal

court. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 93 (2d Cir. 2021). But *City of New York* is not controlling here, for at least two fundamental reasons. First, *City of New York* was not a removal case—the city brought its state-law claims directly in federal court based on diversity jurisdiction—and this Court thus evaluated the oil companies' "preemption defense on its own terms, not under the heightened standard unique to the removability inquiry." *Id.* at 94. Indeed, this Court took pains to emphasize that its decision in no way conflicted with numerous decisions from other federal courts finding that state-law actions against fossil fuel companies were not removable. *Id.* at 93-94.[2]

---

[2] *See City of Oakland v. BP p.l.c.*, 960 F.3d 570, 575 (9th Cir.), *amended & superseded on denial of reh'g*, 969 F.3d 895 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2776 (2021); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 34 (D. Mass. 2020); *Board of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 954 (D. Colo. 2019), *aff'd in part and appeal dismissed in part*, 965 F.3d 792 (10th Cir.), *vacated and remanded on other grounds*, 141 S. Ct. 2667 (2021); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142, 146 (D.R.I. 2019), *aff'd*, 979 F.3d 50 (1st Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 2666 (2021); *Mayor & City Council of Baltimore v. BP p.l.c.*, 388 F. Supp. 3d 538, 548 (D. Md. 2019), *aff'd*, 952 F.3d 452 (4th Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 1532 (2021); *County of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 937-38 (N.D. Cal. 2018), *aff'd in part and appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 2666 (2021).

Second, Connecticut's causes of action—and the facts upon which they are based—are substantively different from those at issue in *City of New York*. The city's lawsuit sought to "impose strict liability for the damages caused by fossil fuel emissions," *id.* at 93, based on the companies' "admittedly *legal* commercial conduct in producing and selling fossil fuels around the world," *id.* at 86 (emphasis added). By seeking to regulate emissions, this Court reasoned, the city's lawsuit was tantamount to imposing "new means of pollution control." *Id.* at 93 (quotation marks omitted).

Here, by contrast, Connecticut challenges not ExxonMobil's production and sale of fossil fuels, but rather ExxonMobil's use of deception and false advertising to promote its products and avoid revenue losses. To establish liability, Connecticut will show that ExxonMobil understood the human causes of climate change from the company's own research, as the complaint alleges, and that the advertisements it published casting doubt on human-induced climate change were dishonest. A judgment based on such findings would not compel ExxonMobil to reduce emissions or alter the balance of federal-state cooperative federalism in the regulation of climate change. Rather, such a judgment would provide Connect-

icut relief for ExxonMobil's unfair and deceptive trade practices and give ExxonMobil an incentive to avoid future deceptive statements to consumers about the relationship between its products and climate change. ExxonMobil's brief never explains how a judgment on that basis—requiring ExxonMobil to be honest in the marketplace—would trench on any federal prerogative.

ExxonMobil's product—as opposed to the marketing of that product—is simply not a target of the lawsuit. The Master Settlement Agreement between tobacco companies and forty-six States illustrates how state lawsuits targeting illegal deceptive practices need not regulate legal commercial conduct. The Master Settlement Agreement prohibits "material misrepresentations of facts regarding the health consequences of using any Tobacco Product," and prohibits a number of deceptive advertising practices that tobacco companies previously used to attract consumers. *See* Master Settlement Agreement Between States and Tobacco Manufacturers at 10-19 (1998) (internet) (last visited Nov. 12, 2021). Those prohibitions regulate marketing, not the production or consumption of tobacco. Here, similarly, if Connecticut's lawsuit proceeds and the parties explore settlement, the parties could arrive at similar

agreements to prevent ExxonMobil from misrepresenting the danger of fossil fuel emissions to consumers—without regulating emissions themselves.

In seeking removal, ExxonMobil wrongly focuses on certain types of damages demanded in Connecticut's complaint, as opposed to the causes of action Connecticut pleads. ExxonMobil argues (Br. at 22-23) that the complaint goes beyond a consumer protection claim because it seeks restitution for "expenditures attributable to ExxonMobil that the State has made and will have to make to combat the effects of climate change." (JA 51.) Nothing about the prayer for relief alters the state-law character of Connecticut's claims under CUTPA. Connecticut, having chosen to limit its claims to CUTPA claims, will receive the relief available under that statute.

The prayer for relief in Connecticut's complaint is plainly tethered to CUTPA: among other things, it seeks a finding that ExxonMobil engaged in deceptive marketing; an injunction barring further deceptive marketing; a fixed civil penalty of $5,000 for each willful CUTPA violation; disgorgement of revenue gained from deceptive conduct; an order directing ExxonMobil to disclose any research in its possession that relates to

climate change; and an order that ExxonMobil fund a corrective education campaign. (JA 51-52.) ExxonMobil certainly is free to argue after remand to the state court that a particular measure of restitution may exceed what CUTPA provides. But Connecticut, as master of its complaint, has chosen to limit its claims to CUTPA, and removability is controlled by the elements of the CUTPA cause of action. *See Shinnecock Indian Nation*, 686 F.3d at 138. That ExxonMobil may have a defense to a particular category of relief on a theory of federal preemption does not mean that the claim itself seeks to regulate interstate pollution or that the case is ripe for adjudication in federal court. *See id.*

### 2. Principles of federalism counsel in favor of keeping Connecticut's claims in state court.

Nor is there any "overriding need for a uniform rule of decision" in matters of consumer protection. *See City of New York*, 993 F.3d at 91 (quotation and alteration marks omitted). "No one doubts that a State may protect its citizens by prohibiting deceptive trade practices . . . . But the States need not, and in fact do not provide such protection in a uniform manner." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568-69 (1996). And, because Connecticut's suit does not affect ExxonMobil's

continuing ability to produce and sell fossil fuels (only its ability to mislead consumers about those fuels' environmental effects), it does not implicate any federal interest in energy or environmental policy.

The "basic interests of federalism" that counseled *against* applying state law in *City of New York*, 993 F.3d at 92 (quotation marks omitted), thus counsel *in favor* of applying state law here. "[T]here is no question that [a State's] interest in ensuring the accuracy of commercial information in the marketplace is substantial." *Edenfield*, 507 U.S. at 769.

The Supreme Court has recently cautioned federal courts of appeals to avoid rushing to judgment that state courts will apply their state tort law to allow recovery in a manner that would conflict with federal law. *See McKesson v. Doe*, 141 S. Ct. 48, 51 (2020). In *McKesson*, the Court urged courts of appeals to let state courts develop their own law rather than invalidate state laws based on presumed conflicts with federal law that might prove "hypothetical." *Id.* That principle of preferring state-court adjudication of state-law liability applies all the more strongly here, where the context is removal, and the plaintiff as master of the complaint chose state courts as the forum.

Tellingly, ExxonMobil declines to invoke the "complete preemption doctrine" as a basis for removal. *See Caterpillar, Inc.*, 482 U.S. at 393. Complete preemption is a distinct doctrine from ordinary preemption and is an exception to the well-pleaded complaint rule in which a very small number of federal statutes have been held to displace all state causes of action as an independent source of rights—for example, collective-bargaining rights covered by the Labor Management Relations Act. *See id.* at 393-94; *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-8 (2003). But ExxonMobil conceded below that its arguments "[w]ouldn't fall within the complete preemption [doctrine]." (JA 176.) That concession requires remand.

Complete preemption would be unavailable in any event, given this Court's recognition that "the Clean Air Act does not make environmental policy an exclusively federal matter." *See City of New York*, 993 F.3d at 87. What ExxonMobil really seeks here is a new doctrine: that there are certain issues that are just *too important* for States to touch even if Congress has not enacted any law to effect complete preemption. Other courts have uniformly refused to embrace ExxonMobil's new removal

doctrine. See *supra* at 13 n.2. Neither complete preemption nor any other doctrine supports such an extraordinary claim.

**B.    A State Court Need Not Decide Any Substantial Federal Issue to Conclude That ExxonMobil Lied About the Causes and Severity of Climate Change.**

ExxonMobil also argues (Br. at 29-36) that removal is proper under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). *Grable* jurisdiction requires that the federal question be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 140-41 (2d Cir. 2021) (quotation marks omitted). These factors are present only in a "special and small category of cases." *Id.* at 140 (quotation marks omitted). This case is not one of them.

Showing that a federal question is necessarily raised is an inquiry that "demands precision," and the party invoking *Grable* jurisdiction "should be able to point to the specific elements of [the plaintiff's] state law claims that require proof that [federal law] was violated and explain why that proof is necessary." *Central Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 914 (8th Cir. 2009).

ExxonMobil cannot identify those specific elements because they are not present. No issue of federal law need be resolved to find that ExxonMobil knows human-caused climate change is real but misled consumers about it to make more money.

Tellingly, ExxonMobil's brief does not discuss the elements of Connecticut's CUTPA claim in any detail, let alone identify an overlap between those elements and a necessarily presented question of federal law. As a district court in California recognized in rejecting the same arguments ExxonMobil makes here, ExxonMobil merely "gesture[s] to federal law and federal concerns in a generalized way." *See County of San Mateo*, 294 F. Supp. 3d at 938. And even if some of the issues described in ExxonMobil's brief are substantial federal issues, its *Grable* argument would fail because those issues are not "actually disputed" by Connecticut via the claims on the face of its well-pleaded complaint. *See Tantaros*, 12 F.4th at 141 (quotation marks omitted).

ExxonMobil argues (Br. at 32) that this lawsuit implicates federal interests such as weighing the harm caused by emissions against the utility of production. But even if Connecticut's claims required such a balancing—and they do not (*see* Br. for Appellee at 42)—that would not

transform a state cause of action into a federal one. If ExxonMobil's theory were correct, then any state-law claims "that involve the balancing of interests and are brought against federally regulated entities would be removable." *County of San Mateo*, 294 F. Supp. 3d at 938. *Grable*, which covers only a "slim category of removable cases," "does not sweep so broadly." *Id.* (quotation marks omitted). Expanding *Grable* in the manner suggested by ExxonMobil would "disturb the balance between federal and state judicial responsibilities." *See Peters v. Alaska Tr., LLC*, 305 F. Supp. 3d 1019, 1028 (D. Alaska 2018) (citing *Grable*, 545 U.S. at 314).

## C. ExxonMobil's Ties to Federal Officers and to the Outer Continental Shelf Cannot Support Removal Because They Are Unrelated to the Conduct Challenged Here.

ExxonMobil also argues (Br. at 36-47) that its ties to the federal government's oil production goals justify removal, either under 28 U.S.C. § 1442(a)(1), the federal officer removal statute, or under 43 U.S.C. §§ 1331-1356b, the Outer Continental Shelf Lands Act (OCSLA). But neither statute provides a basis for removal because Connecticut's CUTPA claims do not relate to any activities supervised by federal officers or conducted on the outer continental shelf.

1. *Federal officers.* Section 1442(a)(1) allows removal of an action brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). A private entity seeking removal under section 1442(a)(1) must show: (1) that it was "acting under" a federal officer; (2) that it "performed the actions for which [it is] being sued under color of [federal] office"; and (3) that it "raise[s] a colorable federal defense." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (quotation marks omitted).

ExxonMobil cannot satisfy these factors. ExxonMobil's claim for federal officer removal stems from the fact that it has "contributed significantly to the United States military by providing fossil fuels that support the national defense" (Br. at 38) and by developing "strategic energy stockpile for the United States" (*id.* at 40). Assuming that these roles qualify as "acting under" the direction of federal officials, they simply have no relationship—let alone a causal nexus—to the "actions for which [ExxonMobil is] being sued," namely, ExxonMobil's deceptive marketing aimed at consumers.

For this reason, other circuits have had little difficulty rejecting similar arguments from ExxonMobil and other oil companies. *See Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 59-60 (1st Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 2666 (2021); *Mayor & City Council of Baltimore v. BP p.l.c.*, 952 F.3d 452, 467 (4th Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 1532 (2021); *accord Massachusetts*, 462 F. Supp. 3d at 46. As the First Circuit observed, the oil companies' arguments "have the flavor of federal officer involvement in the oil companies' business, but that mirage only lasts until one remembers what [the State] is alleging in its lawsuit." *Rhode Island*, 979 F.3d at 59-60.

ExxonMobil argues that the district court applied too strict a causal-relationship standard in light of the 2011 amendments to section 1442, and that it is sufficient for ExxonMobil to show merely that Connecticut's "allegations are directed at the relationship between the defendant and the federal government." Br. at 42 (quotation and alteration marks omitted). But ExxonMobil cannot satisfy even that standard. As the Fourth Circuit explained, even assuming that the "government-directed conduct . . . need only 'relate to' the conduct charged in the

Complaint," there is no relationship between a "sophisticated disinformation campaign" targeting consumers in the retail market and an oil company's specific contracts with the federal government. *See Mayor & City Council of Baltimore*, 952 F.3d at 467-68. "[E]ven under this more expansive standard, ExxonMobil's marketing and sale tactics were not plausibly 'relat[ed] to' the drilling and production activities supposedly done under the direction of the federal government." *Massachusetts*, 462 F. Supp. 3d at 47.

That conclusion is consistent with remand orders in other contexts, and simply makes sense. The fact that the federal government purchases products from a company does not, without more, make it the regulator of the company's product in the retail market or the author of its messages to the consuming public.

For example, the States of Washington and Oregon filed complaints in their respective state courts alleging that Monsanto Company produced products containing polychlorinated biphenyls (PCBs) that contaminated water, land, and wildlife—and that Monsanto intentionally concealed the toxicity of PCBs. Monsanto unsuccessfully attempted to remove the lawsuits to federal court under section 1442 on the ground that the

federal government bought and directed the production of some PCBs. The district courts remanded the cases because the federal government had merely purchased a product from Monsanto and had not directed Monsanto to conceal the toxicity of PCBs. *See Washington v. Monsanto Co.*, 274 F. Supp. 3d 1125 (W.D. Wash. 2017), *aff'd*, 738 F. App'x 554 (9th Cir. 2018); Oral Arg. Tr. at 56-62, *Oregon v. Monsanto Co.*, No. 18-cv-238 (D. Or. Aug. 1, 2018), ECF No. 57.

*2. Outer Continental Shelf.* ExxonMobil's activities on the outer continental shelf similarly lack any relationship with Connecticut's actual claims, and OCSLA thus provides no basis for removal. OCSLA creates federal jurisdiction over cases "arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals." 43 U.S.C. § 1349(b)(1). For OCSLA to apply, the "activities that caused the injury" alleged in a suit must have been an "operation" that was "conducted on the outer Continental Shelf" and the case must be one that "arises out of, or in connection with" that operation. *In re*

*Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014) (quotation marks omitted).

Any connection between Connecticut's consumer deception claims and ExxonMobil's operations on the outer continental shelf is far too attenuated to confer OCSLA jurisdiction. "[F]or jurisdiction to lie, a case must arise directly out of OCS operations." *Board of Cnty. Comm'rs*, 405 F. Supp. 3d at 978. No authority supports ExxonMobil's suggestion that "downstream uses of OCS-derived oil and gas products creates OCSLA jurisdiction." *See id.* at 979. As one court recognized in a similar case, ExxonMobil's arguments would "dramatically expand the statute's scope" to the detriment of States. *See id.* "Any spillage of oil or gasoline involving some fraction of OCS-sourced oil—or any commercial claim over such a commodity—could be removed to federal court. It cannot be presumed that Congress intended such an absurd result." *Id.*

## CONCLUSION

The judgment of the district court should be affirmed.

Dated: New York, New York
November 12, 2021

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Amici States

By:   */s/ Matthew W. Grieco*
MATTHEW W. GRIECO
Assistant Solicitor General

BARBARA D. UNDERWOOD
  *Solicitor General*
STEVEN C. WU
  *Deputy Solicitor General*
MATTHEW W. GRIECO
  *Assistant Solicitor General*
        *of Counsel*

28 Liberty Street
New York, NY 10005
(212) 416-8014

*(Counsel list continues on the next page.)*

KATHLEEN JENNINGS
  Attorney General
  State of Delaware
820 N. French Street, 5th Floor
Wilmington, DE 19801

CLARE E. CONNORS
  Attorney General
  State of Hawaiʻi
425 Queen Street
Honolulu, HI 96813

BRIAN E. FROSH
  Attorney General
  State of Maryland
200 St. Paul Place
Baltimore, MD 21202

MAURA HEALEY
  Attorney General
  Commonwealth of Massachusetts
1 Ashburton Place, 18th Floor
Boston, MA 02108

KEITH ELLISON
  Attorney General
  State of Minnesota
445 Minnesota Street
St. Paul, MN 55101

ANDREW J. BRUCK
  Acting Attorney General
  State of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

HECTOR BALDERAS
  Attorney General
  State of New Mexico
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501

ELLEN F. ROSENBLUM
  Attorney General
  State of Oregon
1162 Court Street N.E.
Salem, OR 97301

JOSH SHAPIRO
  Attorney General
  Commonwealth of Pennsylvania
Strawberry Square
Harrisburg, PA 17120

PETER F. NERONHA
  Attorney General
  State of Rhode Island
150 South Main Street
Providence, RI 02903

ROBERT W. FERGUSON
  Attorney General
  State of Washington
P.O. Box 40100
Olympia, WA 98504-0100

JOSHUA L. KAUL
  Attorney General
  State of Wisconsin
17 W. Main St.
P.O. Box 7857
Madison, WI 53707

KARL A. RACINE
  *Attorney General*
  *District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Kelly Cheung, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 5,204 words and complies with the typeface requirements and length limits of Rules 29 and 32(a)(5)-(7) and Local Rules 29.1 and 32.1.

*/s/ Kelly Cheung*