

OFFICE OF THE ATTORNEY GENERAL
CONNECTICUT

BENJAMIN W. CHENEY                                Phone: 860-808-5250
ASSISTANT ATTORNEY GENERAL                         Fax: 860-808-5386

August 19, 2022

**<u>VIA ELECTRONIC FILING</u>**

Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

                 Re: *State of Connecticut v. ExxonMobil Corporation*, No. 21-1446

Dear Ms. Wolfe:

Pursuant to F.R.A.P. 28(j), Appellee State of Connecticut submits as supplemental authority the decision of the Third Circuit Court of Appeals in the combined appeals of *City of Hoboken v. Chevron Corp.*, No. 21-2728, and *Delaware v. BP America, Inc.*, No. 22-1096. The Third Circuit joined the First, Fourth, Ninth, and Tenth Circuits in rejecting the same arguments for removal that ExxonMobil advances here, holding:

> We agree with our sister circuits:
> - These two lawsuits neither are inherently federal nor raise substantial federal issues that belong in federal court.
> - Oil production on the Outer Continental Shelf is too many steps removed from the burning of fuels that causes climate change.
> - Plus, Delaware and Hoboken are not suing over actions that the companies were directed to take by federal officers.

*Id.* at 21-22. Notably, the Third Circuit reached this holding despite determining that Hoboken and Delaware "charge the oil companies with not just misrepresentations, but also trespass and nuisances . . . caused by burning fossil fuels and emitting carbon dioxide." Decision at 34. The Court therefore lacked federal question jurisdiction even though "burning fossil fuels and emitting carbon dioxide" was an essential element to the common law causes of action alleged. *See* Decision at 24 (distinguishing *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021) as considering only an "ordinary preemption defense to a case first filed in federal court.").

Ms. Wolfe
August 19, 2022
Page 2

The decision's concluding paragraph succinctly explained why the Oil Companies' federal question arguments must fail:

> Climate change is an important problem with national and global implications. But federal courts cannot hear cases just because they are important. The Constitution restricts us to resolving claims that are about federal law or that Congress has expressly authorized us to hear. These claims check neither box. So we cannot hear them.

*Id.* at 36. That logic is even more persuasive here—a case in which the only cause of action alleged is violations of the Connecticut Unfair Trade Practices Act, and "burning fossil fuels and emitting carbon dioxide" is not an essential element of those claims.

Respectfully submitted,

**/s/ Benjamin W. Cheney**

Benjamin W. Cheney
Assistant Attorney General
State of Connecticut

cc:     All counsel of record (via electronic filing)

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2728

_____

CITY OF HOBOKEN

v.

CHEVRON CORPORATION; CHEVRON U.S.A. INC.;
EXXON MOBIL CORPORATION; EXXONMOBIL OIL
CORPORATION; SHELL PLC; BP P.L.C.; BP AMERICA,
INC.; CONOCOPHILLIPS; CONOCOPHILLIPS CO.;
PHILLIPS 66; PHILLIPS 66 COMPANY; AMERICAN
PETROLEUM INSTITUTE; SHELL USA,
Appellants.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-14243)
District Judge: Honorable John M. Vazquez

_____

No. 22-1096

_____

STATE OF DELAWARE, ex rel. Kathleen Jennings,
Attorney General of the State of Delaware

v.

BP AMERICA INC.; BP P.L.C.; CHEVRON
CORPORATION; CHEVRON U.S.A. INC.;
CONOCOPHILLIPS; CONOCOPHILLIPS COMPANY;
PHILLIPS 66; PHILLIPS 66 COMPANY; EXXON MOBIL
CORPORATION; EXXONMOBIL OIL CORPORATION;
XTO ENERGY INC.; HESS CORPORATION;
MARATHON OIL CORPORATION; MARATHON
PETROLEUM CORPORATION; MARATHON
PETROLEUM COMPANY LP; SPEEDWAY LLC;
MURPHY OIL CORPORATION; MURPHY USA INC.;
SHELL PLC; SHELL USA; CITGO PETROLEUM
CORPORATION; TOTALENERGIES SE.; OCCIDENTAL
PETROLEUM CORPORATION; DEVON ENERGY
CORPORATION; APACHE CORPORATION; CNX
RESOURCES CORPORATION; CONSOL ENERGY INC.;
OVINTIV, INC.; AMERICAN PETROLEUM INSTITUTE;
TOTALENERGIES MARKETING USA, INC.,
                                    *Appellants.*

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:20-cv-01429)
District Judge: Honorable Leonard P. Stark

_____

Argued: June 21, 2022

Before: McKEE, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: August 17, 2022)

_____

Theodore J. Boutrous, Jr.
GIBSON DUNN & CRUTCHER
333 S. Grand Ave.
Los Angeles, CA 90071

Thomas G. Hungar
GIBSON DUNN & CRUTCHER
1050 Connecticut Ave. NW
Washington, DC 20036
    *Counsel for Appellants Chevron Corp. & Chevron USA
    Inc. (Nos. 21-2728 & 22-1096)*

Joel M. Silverstein
Herbert J. Stern
STERN KILCULLEN & RUFOLO
325 Columbia Turnpike, Suite 110
Florham Park, NJ 07932
    *Counsel for Appellants Chevron Corp. & Chevron USA
    Inc. (No. 21-2728)*

Joshua D. Dick
GIBSON DUNN & CRUTCHER
555 Mission St., Suite 3000
San Francisco, CA 94105

Andrea E. Neuman
GIBSON DUNN & CRUTCHER
200 Park Ave., 47th Floor
New York, NY 10166

William E. Thomson, III
GIBSON DUNN & CRUTCHER
333 S. Grand Ave.

Los Angeles, CA 90071
*Counsel for Appellants Chevron Corp. & Chevron USA Inc. (No. 22-1096)*

William T. Marks
Kannon K. Shanmugam
PAUL WEISS RIFKIND WHARTON & GARRISON
2001 K St. NW
Washington, DC 20006

Daniel J. Toal
Theodore V. Wells, Jr.
PAUL WEISS RIFKIND WHARTON & GARRISON
1285 Ave. of the Americas
New York, NY 10019
*Counsel for Appellants Exxon Mobil Corp. & ExxonMobil Oil Corp. (Nos. 21-2728 & 22-1096) & XTO Energy (No. 22-1096)*

Kevin H. Marino
John D. Tortorella
MARINO TORTORELLA & BOYLE
437 S. Blvd.
Chatham, NJ 07928
*Counsel for Appellants Exxon Mobil Corp. & ExxonMobil Oil Corp. (No. 21-2728)*

Paul J. Fishman
ARNOLD & PORTER KAYE SCHOLER
One Gateway Ctr., Suite 1025
Newark, NJ 07102

Matthew T. Heartney
John D. Lombardo
ARNOLD & PORTER KAYE SCHOLER
777 S. Figueroa St., 44th Floor
Los Angeles, CA 90017

Jonathan W. Hughes
ARNOLD & PORTER KAYE SCHOLER
3 Embarcadero Ctr., 10th Floor
San Francisco, CA 94111

Nancy G. Milburn
Diana E. Reiter
ARNOLD & PORTER KAYE SCHOLER
250 W. 55th St.
New York, NY 10019
    *Counsel for Appellants BP PLC & BP America Inc.*
    *(Nos.21-2728 & 22-1096)*

Steven M. Bauer
Margaret Tough
LATHAM & WATKINS
505 Montgomery St., Suite 2000
San Francisco, CA 94111

Daniel R. Brody
Jameson R. Jones
BARTLIT BECK
1801 Wewatta St., Suite 1200
Denver, CO 80202
    *Counsel for Appellants ConocoPhillips & ConocoPhillips*
    *Co. (Nos. 21-2728 & 22-1096)*

Jeffrey S. Chiesa
Michael K. Plumb
Dennis M. Toft
CHIESA SHAHINIAN & GIANTOMASI
One Boland Dr.
West Orange, NJ 07024
    *Counsel for Appellants ConocoPhillips & ConocoPhillips*
    *Co. (No. 21-2728)*

Daniel J. Brown
Alexandra M. Joyce
MCCARTER & ENGLISH
405 N. King St.
Renaissance Ctr., 8th Floor
Wilmington, DE 19801
    *Counsel for Appellants ConocoPhillips & ConocoPhillips*
    *Co. (No. 22-1096)*

Steven M. Bauer
LATHAM & WATKINS
505 Montgomery St., Suite 2000
San Francisco, CA 94111
    *Counsel for Appellants Phillips 66 & Phillips 66 Co.*
    *(Nos.21-2728 & 22-1096)*

Anthony P. Callaghan
GIBBONS
One Pennsylvania Plaza, 37th Floor
New York, NY 10119

Sylvia-Rebecca Gutierrez
Thomas R. Valen
GIBBONS

One Gateway Ctr.
Newark, NJ 07102
> *Counsel for Appellants Phillips 66 & Phillips 66 Co.*
> *(No. 21-2728)*

Daniel J. Brown
Alexandra M. Joyce
MCCARTER & ENGLISH
405 N. King St.
Renaissance Ctr., 8th Floor
Wilmington, DE 19801

Margaret Tough
LATHAM & WATKINS
505 Montgomery St., Suite 2000
San Francisco, CA 94111

Robert W. Whetzel
RICHARDS LAYTON & FINGER
920 N. King St.
One Rodney Square
Wilmington, DE 19801
> *Counsel for Appellants Phillips 66 & Phillips 66 Co.*
> *(No. 22-1096)*

Kathryn M. Barber
Brian D. Schmalzbach
MCGUIREWOODS
800 E. Canal St.
Gateway Plaza
Richmond, VA 23219

Jeffrey M. Beyer
Anthony J. Zarillo, Jr.
RIKER DANZIG SCHERER HYLAND & PERRETTI
One Speedwell Ave.
Headquarters Plaza
Morristown, NJ 07962
    *Counsel for Appellant American Petroleum Institute
    (No. 21-2728)*

Kevin J. Mangan
WOMBLE BOND DICKINSON
1313 N. Market St., Suite 1200
Wilmington, DE 19801

Andrew G. McBride
MCGUIREWOODS
888 16th St. NW, Suite 500
Washington, DC 20006
    *Counsel for Appellant American Petroleum Institute
    (No. 22-1096)*

David C. Frederick                    [Argued]
Grace W. Knofczynski
Daniel Severson
KELLOGG HANSEN TODD FIGEL & FREDERICK
1615 M St. NW
Sumner Square, Suite 400
Washington, DC 20036
    *Counsel for Appellants Shell PLC & Shell USA Inc.
    (Nos. 21-2728 & 22-1096)*

Steven L. Caponi
K&L GATES

600 N. King St., Suite 901
Wilmington, DE 19801
   *Counsel for Appellants Shell PLC & Shell USA Inc.*
   *(No. 22-1096)*

Joseph J. Bellew
WHITE & WILLIAMS
600 N. King St., Suite 800
Wilmington, DE 19801

Megan H. Berge
BAKER BOTTS
101 California St., Suite 3200
San Francisco, CA 94111

J. Scott Janoe
BAKER BOTTS
910 Louisiana St.
One Shell Plaza, 37th Floor
Houston, TX 77002
   *Counsel for Appellants Hess Corp. & Murphy Oil Corp.*
   *(No. 22-1096)*

Tristan L. Duncan
SHOOK HARDY & BACON
2555 Grand Blvd.
Kansas City, MO 64108

Daniel B. Rogers
SHOOK HARDY & BACON
201 S. Biscayne Blvd., Suite 3200
Miami, FL 33131
   *Counsel for Appellant Murphy USA (No. 22-1096)*

Michael A. Barlow
ABRAMS & BAYLISS
20 Montchanin Rd., Suite 200
Wilmington, DE 19807

Robert P. Reznick
ORRICK HERRINGTON & SUTCLIFFE
1152 15th St. NW
Columbia Ctr.
Washington, DC 20005
    *Counsel for Appellant Marathon Oil Corp. (No. 22-1096)*

Shannon S. Broome
Ann M. Mortimore
HUNTON ANDREWS KURTH
50 California St., Suite 1700
San Francisco, CA 94111

Shawn P. Regan
HUNTON ANDREWS KURTH
200 Park Ave., 52nd Floor
New York, NY 10166

Antionette D. Hubbard
MARON MARVEL BRADLEY & ANDERSON
1201 N. Market St., Suite 900
Wilmington, DE 19801
    *Counsel for Appellants Marathon Petroleum Corp., Marathon Petroleum Co. LP, & Speedway LLC (No. 22-1096)*

Robert E. Dunn
EIMER STAHL

99 S. Almaden Blvd., Suite 642
San Jose, CA 95113

Nathan P. Eimer
Pamela R. Hanebutt
Lisa S. Meyer
EIMER STAHL
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
*Counsel for Appellant Citgo Petroleum Corp. (No. 22-1096)*

Jeffrey L. Moyer
RICHARDS LAYTON & FINGER
920 N. King St.
One Rodney Square
Wilmington, DE 19801

Vanessa Lavely
Kevin J. Orsini
CRAVATH SWAINE & MOORE
825 Eighth Ave.
Worldwide Plaza
New York, NY 10019
*Counsel for Appellant Occidental Petroleum Corp. (No. 22-1096)*

Joy C. Fuhr
Brian D. Schmalzbach
MCGUIREWOODS
800 E. Canal St.
Gateway Plaza
Richmond, VA 23219

Christian J. Singewald
WHITE & WILLIAMS
600 N. King St., Suite 800
Wilmington, DE 19801
    *Counsel for Appellant Devon Energy Corp. (No. 22-1096)*

Michael A. Barlow
ABRAMS & BAYLISS
20 Montchanin Rd., Suite 200
Wilmington, DE 19807

Alexandra Ewing
Robert W. Whetzel
RICHARDS LAYTON & FINGER
920 N. King St.
One Rodney Square
Wilmington, DE 19801

Robert P. Reznick
ORRICK HERRINGTON & SUTCLIFFE
1152 15th St. NW
Columbia Ctr.
Washington, DC 20005
    *Counsel for Appellant Apache Corp. (No. 22-1096)*

J. Benjamin Aguinaga
JONES DAY
2727 N. Harwood St., Suite 600
Dallas, TX 75201

Noel J. Francisco
David M. Morrell

JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001

David C. Kiernan
JONES DAY
555 California St., 26th Floor
San Francisco, CA 94104
    *Counsel for Appellants CNX Resources Corp., Consol
    Energy Inc., & Ovintiv Inc. (No. 22-1096)*

Tracy A. Roman
Kathleen T. Sooy
CROWELL & MORING
1001 Pennsylvania Ave. NW
Washington, DC 20004
    *Counsel for Appellants CNX Resources Corp. & Consol
Energy Inc. (No. 22-1096)*

Honor R. Costello
CROWELL & MORING
590 Madison Ave., 20th Floor
New York, NY 10022
    *Counsel for Appellant Consol Energy Inc. (No. 22-1096)*

Michael F. Healy
SHOOK HARDY & BACON
555 Mission St., Suite 2300
San Francisco, CA 94105

Mackenzie M. Wrobel
DUANE MORRIS
1201 N. Market St., Suite 501

Wilmington, DE 19801

Michael L. Fox
DUANE MORRIS
7500 B St., Suite 2900
San Diego, CA 92101
    *Counsel for Appellant Ovintiv Inc. (No. 22-1096)*

Blake K. Rohrbacher
Alexandra Ewing
Robert W. Whetzel
RICHARDS LAYTON & FINGER
920 N. King St.
One Rodney Square
Wilmington, DE 19801
    *Counsel for Appellants TotalEnergies Marketing USA Inc.*
    *& Total Energies SE (No. 22-1096)*

Jonathan S. Abady
Matthew D. Brinckerhoff      [Argued]
Ananda V. Burra
Max R. Selver
EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL
600 Fifth Ave., 10th Floor
New York, NY 10020

Gerald Krovatin
Helen A. Nau
KROVATIN NAU
60 Park Place, Suite 1100
Newark, NJ 07102
    *Counsel for Appellee City of Hoboken (No. 21-2728)*

Stephanie D. Biehl
Matthew K. Edling
Quentin C. Karpilow
Victor M. Sher                    [Argued]
SHER EDLING
100 Montgomery St., Suite 1410
San Francisco, CA 94104

Ralph K. Durstein, III
Christian D. Wright
OFFICE OF ATTORNEY GENERAL OF DELAWARE
Delaware Department of Justice
820 N. French St.
Carvel Office Building
Wilmington, DE 19801

Jameson A.L. Tweedie
DELAWARE DEPARTMENT OF JUSTICE
Environmental Unit
391 Lukens Dr.
New Castle, DE 19720
     *Counsel for Appellee Delaware (No. 22-1096)*

James P. Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
     *Counsel for Amici Federal Courts & Foreign Relations*
     *Scholars (No. 22-1096)*

Philip S. Goldberg
SHOOK HARDY & BACON
1800 K St. NW, Suite 1000

Washington, DC 20006
*Counsel for Amici National Association of Convenience Stores, NATSO Inc, Society of Gasoline Marketers of America & National Association of Manufacturers (No. 21-2728) & National Association of Manufacturers (No. 22-1096)*

Jamison Davies
NEW YORK CITY LAW DEPARTMENT
100 Church St.
New York, NY 10007
*Counsel for Amicus City of New York (No. 21-2728)*

Peter D. Huffman
NATURAL RESOURCES DEFENSE COUNCIL
1152 15th St. NW, Suite 300
Washington, DC 20005
*Counsel for Amicus Natural Resources Defense Council (Nos. 21-2728 & 22-1096)*

Christian D. Wright
OFFICE OF ATTORNEY GENERAL OF DELAWARE
Delaware Department of Justice
820 N. French St.
Carvel Office Building
Wilmington, DE 19801
*Counsel for Amici Delaware, Connecticut, Hawaii, Maine, Maryland, Minnesota, New Jersey, New Mexico, New York, Oregon, Rhode Island, Washington, Massachusetts, Pennsylvania, & District of Columbia (No. 21-2728)*

Aaron Kleinbaum
OFFICE OF ATTORNEY GENERAL OF NEW JERSEY

Division of Law
25 Market St.
Hughes Justice Complex
Trenton, NJ 08625
    *Counsel for Amicus New Jersey (No. 22-1096)*

Thomas M. Fisher
OFFICE OF ATTORNEY GENERAL OF INDIANA
302 W. Washington St.
Indianapolis, IN 46204
    *Counsel for Amici Indiana (Nos. 21-2728 & 22-1096) &
    Alabama, Alaska, Arkansas, Georgia, Kansas, Kentucky,
    Mississippi, Missouri, Montana, Nebraska, Oklahoma,
    South Carolina, Texas, Utah, Virginia, & Wyoming (No.
    22-1096)*

William M. Jay
Andrew Kim
GOODWIN PROCTER
1900 N St. NW
Washington, DC 20036
    *Counsel for Amicus Chamber of Commerce of the United
    States of America (Nos. 21-2728 & 22-1096)*

Tristan L. Duncan
SHOOK HARDY & BACON
2555 Grand Blvd.
Kansas City, MO 64108

Daniel B. Rogers
SHOOK HARDY & BACON
201 S. Biscayne Blvd., Suite 3200
Miami, FL 33131

*Counsel for Amici General Richard B. Myers & Admiral Michael G. Mullen (No. 21-2728)*

Patrick A. Thronson
JANET & SUGGS
4 Reservoir Circle, Suite 200
Baltimore, MD 21208
   *Counsel for Amici National League of Cities & United States Conference of Mayors (Nos. 21-2728 & 22-1096)*

Scott L. Nelson
PUBLIC CITIZEN LITIGATION GROUP
1600 20th St. NW
Washington, DC 20009
   *Counsel for Amicus Public Citizen Inc. (No. 22-1096)*

Jonathan W. Cuneo
CUNEO GILBERT & LADUCA
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
   *Counsel for Amicus Robert S. Taylor (No. 22-1096)*

William A. Rossbach
ROSSBACH LAW
401 N. Washington St.
P.O. Box 8988
Missoula, MT 59807
   *Counsel for Amici Robert Kopp, Michael Oppenheimer, Kristina Dahl, Brenda Ekwurzel, Peter C. Frumhoff, Gary B. Griggs, Sverre L. Leroy, L. Delta Merner, & Donald J. Wuebbles (No. 22-1096)*

Ron Kilgard
KELLER ROHRBACK
3101 N. Central Ave., Suite 1400
Phoenix, AZ 85012
  *Counsel for Amici Robert Brulle, Center for Climate Integrity, Chesapeake Climate Action Network, Justin Farrell, Benjamin Franta, Stephan Lewandowsky, Naomi Oreskes, Geoffrey Supran, & Union of Concerned Scientists (No. 22-1096)*

Kenneth T. Kristl
WIDENER UNIVERSITY SCHOOL OF LAW
4601 Concord Pike
P.O. Box 7474
Wilmington, DE 19803
  *Counsel for Amici Legal Scholars (No. 22-1096)*

————————

OPINION OF THE COURT

————————

BIBAS, *Circuit Judge*.

Our federal system trusts state courts to hear most cases—even big, important ones that raise federal defenses. Plaintiffs choose which claims to file, in which court, and under which law. Defendants may prefer federal court, but they may not remove their cases to federal court unless federal laws let them. Here, they do not.

Oil companies ask us to hear two sweeping climate-change suits. But the plaintiffs filed those suits in state court based only

on state tort law. And there is no federal hook that lets defendants remove them to federal court. So we will affirm the District Courts' orders sending them back.

## I. CLIMATE CHANGE COMES TO COURT

Coastal residents have a problem. In recent decades, the oceans have risen, harming beaches and marshland. And communities have suffered torrential rains and stronger hurricanes.

Many residents blame fossil fuels for climate change. Burning fossil fuels releases carbon dioxide. And that carbon dioxide, studies suggest, can heat the air and eventually make the oceans rise.

Angered, cities and states across the country have sued oil companies. They say the oil companies knew how dangerous fossil fuels were for the environment yet did not slow production. And they said nothing about its dangers; on the contrary, they labored to convince the public that burning fossil fuels was fine.

Here, we address two of those suits. Delaware and Hoboken, New Jersey each sued the oil companies in state court for state-law torts. By "produc[ing], marketing, and s[e]l[ling] fossil fuels," they said, the oil companies had worsened climate change. Hoboken App. 68. So they sought damages for the environmental harm they had suffered and injunctions to stop future harm.

Though these suits started in state court, they did not stay there. The oil companies promptly removed them to federal district courts. The suits' broad focus on "*global* climate

change," the companies argued, "demand[ed] resolution by a federal court under federal law." Hoboken App. 194; Del. App. 94. They listed several reasons why:

- the tort claims arose under federal law, either because:
  - they were inherently federal, not state claims, or
  - they raised substantive federal issues;
- the suits related to producing oil on the Outer Continental Shelf; and
- the oil companies were acting under federal officers.

But both District Courts rejected these theories. And they were in good company: so far, four other circuits have refused to allow the oil companies to remove similar state tort suits to federal court. *See Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 50–51 (1st Cir. 2022); *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 238 (4th Cir. 2022); *City & Cnty. of Honolulu v. Sunoco LP*, 2022 WL 2525427, at *2 (9th Cir. July 7, 2022); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 744 (9th Cir. 2022); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1246 (10th Cir. 2022).

We agree with our sister circuits:

- These two lawsuits neither are inherently federal nor raise substantial federal issues that belong in federal court.

- Oil production on the Outer Continental Shelf is too many steps removed from the burning of fuels that causes climate change.
- Plus, Delaware and Hoboken are not suing over actions that the companies were directed to take by federal officers.

So we will affirm the District Courts' orders remanding these cases to state court.

## II. THESE STATE TORT CLAIMS DO NOT "ARISE UNDER" FEDERAL LAW

Not all claims belong in federal court. The Constitution limits us to hearing only cases involving claims "arising under" its provisions, federal laws, or treaties, or those involving admiralty or certain parties. U.S. Const. art. III, §2, cl. 1. All other claims must go to state courts instead. The oil companies may remove these cases to federal court only if they present federal questions. 28 U.S.C. §§1331, 1441.

Most federal-question cases allege violations of the Constitution, federal statutes, or federal common law. But Delaware and Hoboken allege only the torts of nuisance, trespass, negligence (including negligent failure to warn), and misrepresentation, plus consumer-fraud violations, all under state law. So the companies must show either that these state claims are completely preempted by federal law or that some substantial federal issue must be resolved. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005). They show neither.

### A. These are state, not federal, claims

If plaintiffs say their claims are state-law claims, we almost always credit that. That is because plaintiffs are "the master[s] of the[ir] claim[s]." *Caterpillar*, 482 U.S. at 392. They may "avoid federal jurisdiction by exclusive reliance on state law." *Id.* After all, they choose to sue, so they choose why.

But once in a great while, we "recharacteriz[e] a state law claim as a federal claim removable to [federal] court." *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 312 (3d Cir. 1994). We can do that only when some federal statute completely preempts state law.

Complete preemption is different from ordinary preemption. Ordinary preemption is a defense that applies when incompatible federal and state laws regulate the same actions. A defendant may raise ordinary preemption to defeat the plaintiff's state-law claim. *Caterpillar*, 482 U.S. at 392–93.

Complete preemption, by contrast, is a potent jurisdictional fiction. It lets courts recast a state-law claim as a federal one. *Id.* at 393. Defendants can thus remove the suit to federal court. Ordinary preemption defenses cannot work this alchemy. *Id.*

But complete preemption is rare. Federal law completely preempts state law only when there is (1) a federal statute that (2) authorizes federal claims "vindicating the same interest as the state claim." *Goepel*, 36 F.3d at 315. Only statutes that check both boxes can transform state-law claims into federal ones. *Id.* at 311–12. And the Supreme Court has identified only three. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6–8, 10–11 (2003) (ERISA, the National Bank Act, and the Labor-

Management Relations Act). Unsurprisingly, the companies cannot cite an applicable statute that passes this test.

So instead, the oil companies try another tack. They suggest a new form of complete preemption, one that relies not on statutes but federal common law. Rather than limiting ourselves to three federal statutes, they say, we should just ask if our constitutional system "permit[s] the controversy to be resolved under state law." Oil Cos. Br. 29 (Hoboken) (quoting *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981)). Otherwise, states could brush off national interests and upend the federal system. But this theory has a fatal flaw: the lynchpin case that the oil companies cite is about garden-variety preemption, not the complete preemption they need. *See Tex. Indus.*, 451 U.S. at 641.

Undeterred, the oil companies argue that only federal common law can resolve far-reaching climate-change suits. In support, they point to a recent decision holding that a climate-change suit had to be decided under federal, not state, law. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 90–93 (2d Cir. 2021). But that case involved another ordinary-preemption defense to a case first filed in federal court. *Id.* at 94. It did not even try to check the boxes needed for complete preemption. Nor did it suggest another way to get there. *See id.* at 93–94 (acknowledging that its preemption analysis might not satisfy the "heightened standard unique to the removability inquiry").

Next, the companies cite two circuit cases that relabeled state-common-law claims as federal. *See Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 924, 926–29 (5th Cir. 1997); *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th

Cir. 1996). Neither explains what gives federal courts the authority to refashion state-common-law claims as federal. Besides, most courts recognize that these cases are not good law. *See, e.g.*, *Earth Island Inst. v. Crystal Geyser Water Co.*, 521 F. Supp. 3d 863, 874–76 (N.D. Cal. 2021) (noting *New SD*'s unique facts and doubting its continued viability); Del. App. 37 n.9 (collecting cases declining to follow *Sam L. Majors*). We will not follow those outliers.

Finally, the companies cite a Supreme Court footnote's hint that federal courts have broad power to "determine whether the real nature of [a] claim is federal." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (internal quotation marks omitted). But the Court later walked that suggestion back. Recognizing the "considerable confusion" caused by "*Moitie*'s enigmatic footnote," the Court later cabined it to its "case-specific context." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 477–78 (1998) (internal quotation marks omitted). The footnote did not change "the rule" that "a federal defense," like ordinary preemption, does not justify removal. *Id.* at 478.

But the oil companies' biggest problem is that our precedent already forecloses their test. We have said that "the two-part test for complete preemption" is "the *only* basis for recharacterizing a state law claim as a federal claim removable to [federal] court." *Goepel*, 36 F.3d at 312 (emphasis added). So because the oil companies have no statute, they have no removal jurisdiction either.

### B. Nor do they raise a substantial federal question

The state tort claims may not *be* federal, the oil companies say, but at least they raise "substantial, disputed federal questions." Oil Cos. Br. 31 (Hoboken) (citing *Grable*, 545 U.S. at 313–14); Oil Cos. Br. 30 (Del.) (same). And when state claims require resolving substantial federal issues, federal courts can hear them. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). But neither of the federal issues the oil companies identify justifies federal jurisdiction here.

First, the companies rehash their common-law preemption argument. Because emissions claims "arise in an area governed exclusively by federal law," they argue, every "element[] of these claims [is] necessarily federal." Oil Cos. Br. 31 (Del.) (emphasis omitted); *see also* Oil Cos. Br. 31 (Hoboken) (same).

But this is the same wolf in a different sheep's clothing. The federal issue that the oil companies identify is whether federal common law governs these claims. Yet as we have said, there is no complete preemption here. And ordinary preemption is a *defense*. Defenses are not the kinds of substantial federal questions that support federal jurisdiction. *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

Contrast this argument with the two key cases defining what federal questions are substantial and disputed. In each, to prove some *element* of a state-law claim, the plaintiff had to win on an issue of federal law. In *Grable*, an "essential element of [Grable's state] quiet title claim" required it to prove that the IRS had not "give[n] it adequate notice, as defined by federal

law." 545 U.S. at 314–15. And in *Gunn*, to show legal malpractice, Gunn had to prove that if his lawyers had been competent, "he would have prevailed in his federal patent infringement case." 568 U.S. at 259.

Finally, the oil companies raise First Amendment problems. They stress that these suits charge them with misrepresenting "matters of public concern" about climate change. Oil Cos. Br. 33 (Hoboken); Oil Cos. Br. 33 (Del.). But though the First Amendment limits state laws that touch speech, those limits do not extend federal jurisdiction to every such claim. State courts routinely hear libel, slander, and misrepresentation cases involving matters of public concern. The claims here arise under state law, and their elements do not require resolving substantial, disputed federal questions.

### III. THESE CLAIMS ARE TOO FAR REMOVED FROM OIL PRODUCTION ON THE OUTER CONTINENTAL SHELF

The oil companies fall back on statutes that let federal courts hear state-law claims on special subjects. Here, they cite a law that lets federal courts hear cases

> arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals….

43 U.S.C. §1349(b)(1).

The companies stress that a sizable chunk of oil comes from the Shelf. *See* Oil Cos. Br. 60 (Hoboken) (one-third of U.S.-produced oil); Oral Arg. 39:04–20 (1–5% of global oil). So, they say, the Shelf Act lets us hear these cases. To weigh this argument, we must figure out what the Shelf Act means and how it applies.

## A. For jurisdiction, the Shelf Act requires a close link to operations on the Shelf

*1. Oil production on the Shelf need not cause the suit.* Start with the text. The parties (and other circuits) dispute what it takes for a suit to be "in connection with" shelf operations. Hoboken and Delaware argue that this phrase limits jurisdiction to cases where oil production is a but-for cause of the tort or the like. The Fourth, Fifth, and Tenth Circuits agree. *See Mayor & City Council of Balt.*, 31 F.4th at 220; *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014); *Bd. of Cnty. Comm'rs of Boulder Cnty.*, 25 F.4th at 1272–75.

But that reading is too cramped. "Connection" reaches beyond causation. It means a "causal *or logical* relation or sequence." *Connection* (def. 1a), *Webster's Ninth New Collegiate Dictionary* (1988) (emphasis added); *accord Connexion* (def. 3), *Oxford English Dictionary* (2d ed. 1989) ("a bond of interdependence, causality, logical sequence, coherence, or the like"). Legos, puzzle pieces, and train cars connect, though they do not cause one another. And as statisticians stress, a correlation or connection does not imply causation.

The structure of the provision confirms this reading. The jurisdictional phrase covers both suits "arising out of"

production on the Shelf and those "in connection with" it. 43 U.S.C. § 1349(b)(1). The most natural reading is that the arising-out-of-language "asks about causation; but" the in-connection-with wording "contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (interpreting similar language from a judicial rule requiring that specific personal jurisdiction "arise out of *or relate to*" the disputed conduct (internal quotation marks omitted)). Reading the second half to require causation would make it redundant with the first half. *See Yates v. United States*, 574 U.S. 528, 543 (2015) (canon against surplusage).

Though we depart from some circuits' approaches, other precedent supports our reasoning. Indeed, at least the Ninth Circuit reads the Shelf Act not to require but-for causation. *San Mateo*, 32 F.4th at 754. Plus, courts have read similar connection language in different statutes or rules to cover more than just but-for causes. *See, e.g.*, *Maracich v. Spears*, 570 U.S. 48, 59 (2013) (Privacy Act); *United States v. Loney*, 219 F.3d 281, 284 (3d Cir. 2000) (Sentencing Guidelines). "[I]n connection with" is "broad." *Mont v. United States*, 139 S. Ct. 1826, 1832 (2019) (interpreting that language in another statute). So we read it broadly.

*2. A suit must be linked closely to production or development on the Shelf*. But however broad, the statute must stop somewhere. *See id.* (recognizing that "in connection with" must have "outer bounds"). Otherwise, "connections, like relations, stop nowhere." *Maracich*, 570 U.S. at 59 (internal quotation marks omitted). Applied loosely, the statute could sweep

29

in many routine state-law claims. Fender benders might be connected to the Shelf if the cars' gas tanks held gas produced there. An insurance dispute over arson could be connected if the arsonist threw Shelf oil on the fire. Or a products-liability suit over a defective hair dryer might be connected if Shelf petroleum went into the hair dryer's plastic. But our system presumes that most state-law claims belong in state, not federal, court. 13 Charles A. Wright et al., *Federal Practice & Procedure* § 3522 (4th ed. 2022); *see* U.S. Const. art. III, § 2, cl. 1 (limiting federal jurisdiction). And we must read this statute "consistent with [this] principle[] of federalism inherent in our constitutional structure." *Bond v. United States*, 572 U.S. 844, 856 (2014).

As we have explained, Delaware and Hoboken bring traditional state-law claims. And their connection to the Shelf is not immediately apparent from their complaints. They never reference the Shelf. The gist of their complaint is not about *producing* oil on the Shelf but selling it to people to burn in their cars, homes, and manufacturing plants.

To avoid "usurp[ing] state judicial power" by hearing this case, we must decide whether it falls beyond the bounds of the statute. 13 Wright et al., *Federal Practice & Procedure* § 3522. Alone, "the phrase 'in connection with' … provides little guidance" and is "essentially indeterminat[e]." *Maracich*, 570 U.S. at 59–60 (alteration in original) (internal quotation marks omitted). So it cannot help us decide which cases belong in state court and which should come to federal court. Still, federalism counsels in favor of finding some limit. In similar statutes, we have divined "a limiting principle" by looking to "the structure

of the statute[,] its other provisions," and the rest of the disputed provision itself. *Id.* at 60; *see also Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014) (focusing "in connection with" in the PSLRA by looking to other phrases in the provision).

The Shelf Act focuses narrowly on operations on the Outer Continental Shelf, the underwater area outside state boundaries but under federal control. *See* 43 U.S.C. §§ 1331(a), 1301(a) (defining the Shelf). Consider the surrounding language of the jurisdictional provision. We may hear cases "in connection with (A) any operation *conducted on the outer Continental Shelf* which involves exploration, development, or production of the minerals, of the subsoil and seabed *of the outer Continental Shelf*." 43 U.S.C. § 1349(b)(1) (emphases added). This phrasing focuses in on "physical activity" taken "on the [Shelf]." *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996). Indeed, as the Fifth Circuit has explained, the word "operation" requires courts to decide whether actions occurred "on the [Shelf] or not." *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1207 (5th Cir. 1988).

The operations covered are tied to "exploration, development, or production," not anything like consumption, combustion, or emission. Those operations must be "conducted on" the Shelf itself. Even more precisely, the location is the Shelf's very "subsoil and seabed." This language all focuses on the oil drilling on the Shelf itself, not oil consumption hundreds or thousands of miles away.

Other parts of the Shelf Act also reinforce this limitation to operations on the Shelf. The next subparagraph creates federal

31

jurisdiction over lease and permit disputes to decide who has the right to produce oil on the Shelf. §1349(b)(1)(B). The paragraph after that creates federal jurisdiction over production-related injuries. §1349(b)(2). Both types of covered conduct are tethered to the physical production of Shelf oil, not its later consumption.

Likewise, the venue rules for the Shelf Act focus on activities that are not within states. For instance, the Act locates these suits in "the judicial district of the State *nearest* the place the cause of action arose." §1349(b)(1) (emphasis added). That language is unusual; venue laws typically send lawsuits to the district "in which" or "where" the events happened. *See, e.g.*, 28 U.S.C. §§1391(b)(2), (e)(1) & (1)(B), (f)(1), 1400(b); 42 U.S.C. §2000e-5(f)(3); 49 U.S.C. §32308(e). But "nearest" makes sense if the Act primarily covers operations out on the Shelf, beyond any state's boundaries.

Indeed, the Act focuses on setting rules for that narrow geographic area. The Act as a whole "define[s] a body of law applicable to the seabed, the subsoil, and the fixed structures … on the outer Continental Shelf." *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969). Thus, it sets up a program for leasing out Shelf land. 43 U.S.C. §1334. And it sets which laws apply there. §1333; *Rodrigue*, 395 U.S. at 356–57. This too is directed at activities on the Shelf itself.

Last, though this textual reasoning may be new, the operational limitation fits the intuition of past precedent. Shelf Act cases fall into four buckets:

- Disputes about who may operate on the Shelf. *See, e.g.*, *W&T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 231–32 (5th Cir. 2019) (lease dispute); *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990) (contract dispute); *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 513 (5th Cir. 2012) (mem.) (same).

- Cases about transporting oil or gas from the Shelf. *See, e.g.*, *Medco Energi US, LLC v. Sea Robin Pipeline Co.*, 729 F.3d 394, 396 (5th Cir. 2013).

- Disputes over first-order contracts to buy oil or gas produced on the Shelf. *See, e.g.*, *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1203, 1210 (5th Cir. 1988) (involving contracts that "b[ore] on the production of … particular" oil and gas reservoirs on the Shelf).

- And tort suits about accidents on the Shelf. *See, e.g.*, *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 213 (5th Cir. 2016) (chain broke & oil equipment sank); *In re Deepwater Horizon*, 745 F.3d at 161–62 (Gulf oil spill); *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 211–12 (5th Cir. 2013) (oil-rig worker fell to his death).

All those cases target activity on the Shelf or pipelines connected to it. Thus, though they do not expressly adopt our operational limitation, their conclusions fit with our reasoning. *Cf. San Mateo*, 32 F.4th at 753 (analogizing the Shelf Act to

jurisdiction over federal enclaves). So we ask: do the lawsuits here target actions on or closely connected to the Shelf? No.

### B. These suits are too many steps removed from operations on the Shelf for jurisdiction

Delaware and Hoboken try to cast their suits as just about misrepresentations. But their own complaints belie that suggestion. They charge the oil companies with not just misrepresentations, but also trespasses and nuisances. Those are caused by burning fossil fuels and emitting carbon dioxide.

These claims are all too far away from Shelf oil production. True, Delaware and Hoboken take issue with the oil companies' entire business, from production through sale. But the carbon emissions they deplore come not from extracting oil and gas, but burning them: driving cars, heating houses, fueling machinery. Indeed, if the oil companies had produced oil, stored it, and never sold it, their carbon emissions would be a fraction of their size. Thus, Delaware and Hoboken are upset, not by Shelf production, but by what oil companies did with their oil after it hit the mainland: sell it for people to burn. That is several steps further away from exploration and production on the Shelf than pipeline disputes and oil-rig injuries. So the Shelf Act does not give us jurisdiction to hear this suit.

## IV. THESE SUITS DO NOT TARGET ACTIONS TAKEN FOR THE GOVERNMENT

Finally, the oil companies say that we can hear these suits because of their business connections to the federal government. *Cf.* 28 U.S.C. §1442(a) (allowing removal of claims

"relating to" actions taken "under" federal officers). They press several theories:

- The government has leased them drilling rights on the Shelf.

- The companies have also contributed oil to the government's Strategic Petroleum Reserve.

- Plus, one company operated the national reserve from World War II through the 1970s.

- During World War II, the companies also produced specialty materials for the war effort.

- And they have continued to contribute specialty fuels since.

All these theories fail.

Start with the Shelf leases. Though the federal government grants the leases, oil produced under them is produced "to sell on the open market," not specifically for the government. Del Br. 50; *see* 43 U.S.C. § 1334; *Bd. of Cnty. Comm'rs of Boulder Cnty.*, 25 F.4th at 1253–54. Nor do the leases impose close federal control. And complying with run-of-the-mill regulations on oil and gas production is not enough for federal jurisdiction. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 152–53 (2007); *see* 43 U.S.C. § 1334 (lease regulatory program); Del. App. 49–52 (same).

The companies' other theories at least focus on products or services that they provided to the federal government. But these, too, are unavailing. In their complaints, both Hoboken

and Delaware insist that they are not suing over emissions caused by fuel provided to the federal government.

Resisting this conclusion, the companies say that these suits cannot separate harm caused by military fuel use from harm caused by civilian fuel use. So they ask us to disregard these disclaimers as "merely artful pleading designed to circumvent federal officer jurisdiction." *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021) (internal quotation marks omitted).

But the disclaimers are no ruse. Artful pleading disguises federal claims as state ones. *See* 14C Wright et al., *Federal Practice & Procedure* §3722.1 (artful pleading). Yet here, there are no federal claims to disguise. The causes of action are about state torts. And there is no complete preemption. So this argument just retreads well-worn ground.

Instead, Delaware and Hoboken carve out a small island that would needlessly complicate their cases. One amicus estimates that the Department of Defense is responsible for less than 1/800th of the world's energy consumption. Robert Taylor Amicus Br. 15–16. Delaware and Hoboken urge us not to hang our jurisdiction on so small a slice of the pie. We will not.

\* \* \* \* \*

Climate change is an important problem with national and global implications. But federal courts cannot hear cases just because they are important. The Constitution restricts us to resolving claims that are about federal law or that Congress has expressly authorized us to hear. These claims check neither box. So we cannot hear them.