

OFFICE OF THE ATTORNEY GENERAL
CONNECTICUT

March 22, 2023

**VIA ELECTRONIC FILING**

Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *State of Connecticut v. ExxonMobil Corporation*, **No. 21-1446**

Dear Ms. Wolfe:

Pursuant to F.R.A.P. 28(j), Appellee State of Connecticut writes to update the Court on the issue raised in ExxonMobil's letter dated October 4, 2022. (Dkt. No. 177; *see also* Dkt. No. 127) The Solicitor General has submitted a brief advising the Supreme Court that "[i]n the view of the United States, the petition for a writ of certiorari should be denied" in *Suncor Energy (U.S.A.) Inc. v. Board of County Commissioners of Boulder County*, No. 21-1550. Brief at 1.

The position of the United States is clear: remand was proper in *Boulder* because "state law claims like those pleaded here should not be recharacterized as claims arising under federal common law." *Id.* at 6-7. This position is grounded in black-letter law. *Id.* at 6-16 ("[u]nder the well-pleaded complaint rule, respondents' claims do not present a federal question" and no exception to that rule applies). It is buttressed by the unanimity of Circuit Courts that have evaluated this issue. *Id.* at 17 ("[l]ike the Tenth Circuit in this case, the First, Third, Fourth, and Ninth Circuits have specifically rejected the contention that federal common law provides a basis for removal."). And it is further strengthened by the absence of any Circuit split on this issue. *Id.* at 17-22 ("both the Second Circuit and the court of appeals in this case have disclaimed the existence of any conflict, based on the distinction between removability and ordinary preemption.").

Respectfully Submitted,

/s/ Benjamin Cheney
Benjamin Cheney
Assistant Attorney General
State of Connecticut

cc: All counsel of record (via electronic filing)

**No. 21-1550**

# In the Supreme Court of the United States

———

SUNCOR ENERGY (U.S.A.) INC., ET AL.,
PETITIONERS

*v.*

BOARD OF COUNTY COMMISSIONERS OF
BOULDER COUNTY, ET AL.

———

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT*

———

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

———

ELIZABETH B. PRELOGAR
  *Solicitor General*
    *Counsel of Record*
TODD KIM
  *Assistant Attorney General*
MALCOLM L. STEWART
  *Deputy Solicitor General*
FREDERICK LIU
  *Assistant to the Solicitor*
    *General*
AMANDA LEITER
  *Senior Counsel to the*
    *Assistant Attorney General*
CHRISTINE ENNIS
  *Attorney*

  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *SupremeCtBriefs@usdoj.gov*
  *(202) 514-2217*

## QUESTION PRESENTED

Whether this suit may be removed to federal court on the ground that respondents' state-law claims should be recharacterized as claims arising under federal common law.

(I)

**TABLE OF CONTENTS**

Page

Interest of the United States.....................................................1
Statement .................................................................................1
Discussion ...............................................................................6
    A.   The court of appeals correctly declined to
         recharacterize respondents' state-law claims as
         claims arising under federal common law....................7
        1.  Under the well-pleaded complaint rule,
            respondents' claims do not present a federal
            question ................................................................7
        2.  No exception to the well-pleaded complaint
            rule applies here .....................................................11
    B.   The decision below does not conflict with any
         decision of another court of appeals ...........................16
Conclusion ............................................................................22

**TABLE OF AUTHORITIES**

Cases:

    *Aetna Health Inc.* v. *Davila*, 542 U.S. 200 (2004) .............11
    *American Elec. Power Co.* v. *Connecticut*,
        564 U.S. 410 (2011)...............................................5, 11-13, 16
    *Beneficial Nat'l Bank* v. *Anderson*, 539 U.S. 1 (2003) ......15
    *BP p.l.c.* v. *Mayor & City Council of Baltimore*,
        141 S. Ct. 1532 (2021) .......................................................4, 6
    *Caterpillar Inc.* v. *Williams*, 482 U.S. 386 (1987)......8, 9, 14
    *City & County of Honolulu* v. *Sunoco LP*,
        39 F.4th 1101 (9th Cir. 2022), petition for cert.
        pending, No. 22-523 (filed Dec. 2, 2022) ..........................17
    *City of Chicago* v. *International Coll. of Surgeons*,
        522 U.S. 156 (1997)...............................................................8
    *City of Hoboken* v. *Chevron Corp.*,
        45 F.4th 699 (3d Cir. 2022), petition for cert.
        pending, No. 22-821 (filed Feb. 27, 2023) ............16, 17, 20

(III)

IV

Cases—Continued: Page

*City of Milwaukee* v. *Illinois*, 451 U.S. 304 (1981) ............ 13

*City of New York* v. *Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021) ...............................................17-19

*City of Oakland* v. *BP PLC*, 969 F.3d 895
(9th Cir. 2020), cert. denied, 141 S. Ct. 2776 (2021)......... 17

*County of San Mateo* v. *Chevron Corp.*,
32 F.4th 733 (9th Cir. 2022), petition for cert.
pending, No. 22-495 (filed Nov. 22, 2022) ........................ 17

*Empire Healthchoice Assurance, Inc.* v. *McVeigh*,
547 U.S. 677 (2006)............................................................. 15

*Franchise Tax Bd.* v. *Construction Laborers
Vacation Trust for S. Cal.*, 463 U.S. 1 (1983)......... 9, 11, 13

*Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g &
Mfg.*, 545 U.S. 308 (2005)................................................ 9, 10

*Gunn* v. *Minton*, 568 U.S. 251 (2013) ................................ 1, 9

*International Paper Co.* v. *Ouellette*,
479 U.S. 481 (1987)........................................................13-15

*Louisville & Nashville R.R.* v. *Mottley*,
211 U.S. 149 (1908)...........................................................8-10

*Mayor & City Council of Baltimore* v. *BP p.l.c.*,
31 F.4th 178 (4th Cir. 2022), petition for cert.
pending, No. 22-361 (filed Oct. 14, 2022) ................... 17, 20

*Merrell Dow Pharms. Inc.* v. *Thompson*,
478 U.S. 804 (1986)............................................................. 13

*Merrill Lynch, Pierce, Fenner & Smith Inc.* v.
*Manning*, 578 U.S. 374 (2016) .......................................... 10

*Metropolitan Life Ins. Co.* v. *Taylor*,
481 U.S. 58 (1987) ......................................................... 8, 15

*Oneida Indian Nation of N.Y.* v. *County of Oneida*,
414 U.S. 661 (1974)............................................................. 13

*Otter Tail Power Co., In re*,
116 F.3d 1207 (8th Cir. 1997)............................................. 20

V

Cases—Continued:                                                    Page

*Rhode Island* v. *Shell Oil Prods. Co.*,
  35 F.4th 44 (1st Cir. 2022), petition for cert.
  pending, No. 22-524 (filed Dec. 2, 2022) .............. 16, 17, 19

*Rivet* v. *Regions Bank of La.*, 522 U.S. 470 (1998)............. 11

*Sam L. Majors Jewelers* v. *ABX, Inc.*,
  117 F.3d 922 (5th Cir. 1997)................................................. 21

*Smith* v. *Kansas City Title & Trust Co.*,
  255 U.S. 180 (1921)............................................................ 10

*Taylor* v. *Anderson*, 234 U.S. 74 (1914)................................ 8

*Vaden* v. *Discover Bank*, 556 U.S. 49 (2009)......................... 8

Statutes:

Clean Air Act, 42 U.S.C. 7401 *et seq.* ..................................... 3
12 U.S.C. 86 ........................................................................ 15
28 U.S.C. 1331 ............................................................. 2, 3, 8
28 U.S.C. 1332 ..................................................................... 17
28 U.S.C. 1332(a) ................................................................. 15
28 U.S.C. 1441(a) .............................................................. 1, 7
28 U.S.C. 1442 .................................................................. 2, 4
28 U.S.C. 1443 .................................................................. 2, 4
28 U.S.C. 1446(a) .................................................................. 2
28 U.S.C. 1446(d) .................................................................. 2
28 U.S.C. 1447(c) .................................................................. 2
28 U.S.C. 1447(d) .............................................................. 2, 4
29 U.S.C. 1132(a) ................................................................. 15

# In the Supreme Court of the United States

————

No. 21-1550

SUNCOR ENERGY (U.S.A.) INC., ET AL.,
PETITIONERS

*v.*

BOARD OF COUNTY COMMISSIONERS OF
BOULDER COUNTY, ET AL.

————

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT*

————

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

————

### INTEREST OF THE UNITED STATES

This brief is submitted in response to the Court's order inviting the Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be denied.

### STATEMENT

1. "Federal courts are courts of limited jurisdiction." *Gunn* v. *Minton*, 568 U.S. 251, 256 (2013) (citation omitted). Congress has specified the types of suits that defendants may remove from state court to federal court. The general removal statute permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. 1441(a). Such cases include "all civil actions arising under the Constitution, laws, or treaties

(1)

2

of the United States." 28 U.S.C. 1331. Various specialized removal statutes—such as the federal-officer removal statute, 28 U.S.C. 1442, and the civil-rights removal statute, 28 U.S.C. 1443—permit the removal of other types of actions.

To "effect the removal" of a suit filed in state court, 28 U.S.C. 1446(d), a defendant must file in the appropriate federal district court "a notice of removal" that "contain[s] a short and plain statement of the grounds for removal," 28 U.S.C. 1446(a). The plaintiff then may file a motion to remand the case to state court, including for lack of federal subject-matter jurisdiction. 28 U.S.C. 1447(c). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Ibid.* An order remanding a case "is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of [Title 28] shall be reviewable." 28 U.S.C. 1447(d).

2. Respondents are three local governmental entities in Colorado. Am. Compl. ¶ 1. Petitioners are four energy companies that engage in "fossil fuel activities"—*i.e.*, the production, promotion, refining, marketing, and sale of fossil fuels. *Id.* ¶ 14; see *id.* ¶ 2.

In 2018, respondents filed suit against petitioners in Colorado state court. D. Ct. Doc. 6 (June 29, 2018). Respondents' complaint alleges that petitioners' "fossil fuel activities" led to "use" of "fossil fuels," which in turn caused "greenhouse gas emissions" that contributed to climate change. Am. Compl. ¶ 15. Respondents further allege that petitioners "knew" about, but "affirmatively misrepresent[ed]," the "dangers of unchecked fossil fuel use." *Id.* ¶ 18. The complaint asserts six state-law causes of action—public nuisance, private nuisance, trespass,

3

unjust enrichment, violation of a Colorado consumer-protection statute, and civil conspiracy—and seeks damages for climate-change-related injuries to respondents' property and residents. *Id.* ¶¶ 444-541.

Petitioners removed the case to federal court pursuant to the general removal statute, the federal-officer removal statute, and other statutes. D. Ct. Doc. 1, at 1 (June 29, 2018). With respect to the general removal statute, petitioners asserted several grounds for concluding that respondents' suit "aris[es] under" federal law. 28 U.S.C. 1331; see D. Ct. Doc. 1, at 2-4. As relevant here, petitioners contended that respondents' claims "are governed by federal common law." D. Ct. Doc. 1, at 9. Petitioners also contended that respondents' claims "are completely preempted by" the Clean Air Act, 42 U.S.C. 7401 *et seq.*, which petitioners described as "provid[ing] the exclusive cause of action for challenging the regulation of nationwide emissions," D. Ct. Doc. 1, at 4, 13.

Respondents moved to remand the case for lack of federal subject-matter jurisdiction. D. Ct. Doc. 34, at 1 (July 30, 2018). The district court granted the motion and ordered the case remanded to state court. Pet. App. 60a-114a. The district court rejected each of petitioners' asserted grounds for removal, including under the general removal statute and under the federal-officer removal statute. *Id.* at 64a-114a. With respect to the general removal statute, the court observed that, under the well-pleaded complaint rule, "a case arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." *Id.* at 64a (citation omitted). The court found that removal of respondents' suit was inappropriate under that rule, explaining that respondents' complaint "on its

4

face pleads only state law claims," *id.* at 76a, none of which has "as an element any aspect of federal law," *id.* at 84a. In the court's view, petitioners' assertion that the "state law claims are governed by federal common law" raised only an "ordinary preemption" defense, which was insufficient to "render [the] state-law claim[s] removable to federal court." *Id.* at 79a; see *id.* at 98a (rejecting federal common law as a ground for "complete preemption"). The court also rejected petitioners' reliance on the Clean Air Act, explaining that because the Act "expressly preserves many state common law causes of action," "Congress did not intend the Act to provide exclusive remedies in these circumstances, or to be a basis for removal under the complete preemption doctrine." *Id.* at 91a.

3. The court of appeals affirmed. 965 F.3d 792. The court concluded that, under Section 1447(d), a district court's remand order is reviewable "only to the extent it addresses" the statutory grounds for removal "explicitly" referenced in Section 1447(d)—namely, Sections 1442 and 1443. *Id.* at 819. The court of appeals reviewed, and upheld, the district court's determination that petitioners had "failed to establish grounds for federal officer removal" under Section 1442. *Id.* at 798. Based on the court of appeals' determination that it lacked appellate jurisdiction to address petitioners' other proffered grounds for removal, the court dismissed the remainder of the appeal. *Id.* at 827.

Petitioners filed a petition for a writ of certiorari. While that petition was pending, this Court held that Section 1447(d) "permit[s] a court of appeals to review any issue in a district court order remanding a case to state court where the defendant premised removal in part on" Section 1442 or 1443. *BP p.l.c.* v. *Mayor & City*

*Council of Baltimore*, 141 S. Ct. 1532, 1536 (2021). The Court subsequently granted petitioners' certiorari petition, vacated the court of appeals' judgment, and remanded for further consideration in light of the decision in *BP*. 141 S. Ct. 2667.

4. On remand, the court of appeals again affirmed the district court's order. Pet. App. 1a-59a. The court recognized that, in light of *BP*, it had jurisdiction to review all "grounds of federal subject-matter jurisdiction advanced in support of removal on appeal." *Id.* at 2a. The court of appeals then determined that "the district court correctly rejected each ground." *Id.* at 9a.

As relevant here, the court of appeals rejected petitioners' contention that "there is federal-question jurisdiction over [respondents'] state-law claims because they are governed by federal common law." Pet. App. 24a. Relying on *American Electric Power Co.* v. *Connecticut*, 564 U.S. 410 (2011) (*AEP*), the court concluded that the Clean Air Act had displaced "the federal common law of interstate air pollution." Pet. App. 27a. The court held that "this case could 'not have been removed to federal court on the basis of federal common law that no longer exists.'" *Id.* at 30a (citation omitted).[1]

The court of appeals also rejected petitioners' contention that respondents had "artfully pleaded their state-

---

[1] The court of appeals noted that, "[e]ven if the pre-*AEP* federal common law of transboundary pollution remained viable," it was "unclear" whether this case would be "properly placed within that realm." Pet. App. 29a n.5. The court observed that it was an "open question" whether political subdivisions were "the type of parties" that could "bring a federal common law nuisance claim." *Ibid.* (brackets and citation omitted). The court further observed that it was "unsettled whether the federal common law of interstate pollution cover[ed] suits brought against product sellers rather than emitters." *Ibid.*

6

law claims" to conceal the claims' "federal nature" as "federal common law claims." Pet. App. 31a. The court stated that "[i]t is only when the merits of a defense based on 'complete preemption' are considered that the court is free to look behind the plaintiff's chosen claims to determine whether federal law has completely preempted the area." *Ibid.* The court further observed that "complete preemption requires congressional intent." *Id.* at 32a. It explained that, "[b]ecause federal common law is created by the judiciary—not Congress—Congress has not 'clearly manifested an intent' that the federal common law for transboundary pollution will completely preempt state law." *Ibid.* (citation omitted). The court of appeals also "affirm[ed] the district court's rejection of complete preemption by the [Clean Air Act] as a basis for federal jurisdiction," *id.* at 38a, explaining that the Act "does not provide an exclusive federal cause of action for suits against private polluters" or preempt "all state law in that area," *id.* at 35a.

### DISCUSSION

Petitioners contend (Pet. 24-31) that this suit may be removed to federal court on the ground that respondents' state-law claims should be recharacterized as claims arising under federal common law. But the Clean Air Act has displaced any relevant federal common law in this area, and no exception to the well-pleaded complaint rule applies. The court of appeals therefore correctly declined to recharacterize respondents' state-law claims, and its decision does not conflict with any decision of another court of appeals.

In an amicus brief filed in *BP p.l.c.* v. *Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021), the United States took the position that claims involving cross-boundary pollution "that seek to apply the law of an af-

7

fected State to conduct in another State" "may well be" thought to "arise under" federal law for "jurisdictional purposes," "even if such claims may be displaced by the Clean Air Act." U.S. Amicus Br. at 26, 27, *BP*, *supra* (No. 19-1189) (emphasis omitted). The Court's decision in *BP* did not address the proper resolution of that jurisdictional issue, but simply made clear that the court of appeals on remand could consider all potential arguments for removal. 141 S. Ct. at 1543. Since then, all five courts of appeals that have considered the issue have rejected the position that the government took in *BP*. See pp. 16-17, *infra*. After the change in Administration and in light of those intervening developments, the United States has reexamined its position and has concluded that state-law claims like those pleaded here should not be recharacterized as claims arising under federal common law.

The petition for a writ of certiorari should be denied.

### A. The Court Of Appeals Correctly Declined To Recharacterize Respondents' State-Law Claims As Claims Arising Under Federal Common Law

Respondents brought this suit in state court, alleging only state-law claims. Under the well-pleaded complaint rule, respondents' claims do not present a federal question, and petitioners have identified no sound basis for recharacterizing those claims.

#### 1. Under the well-pleaded complaint rule, respondents' claims do not present a federal question

a. Under the general removal statute, a defendant may remove to the appropriate federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. 1441(a). "The propriety of removal

thus depends on whether the case originally could have been filed in federal court." *City of Chicago* v. *International Coll. of Surgeons*, 522 U.S. 156, 163 (1997). "One category of cases over which the district courts have original jurisdiction are 'federal question' cases; that is, those cases 'arising under the Constitution, laws, or treaties of the United States.'" *Metropolitan Life Ins. Co.* v. *Taylor*, 481 U.S. 58, 63 (1987) (quoting 28 U.S.C. 1331).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 392 (1987). Under that rule, "a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon federal law.'" *Vaden* v. *Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R.R.* v. *Mottley*, 211 U.S. 149, 152 (1908)) (brackets omitted); see *Taylor* v. *Anderson*, 234 U.S. 74, 75 (1914) (explaining that whether a suit arises under federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim").

By focusing on what the plaintiff has chosen to plead, the well-pleaded complaint rule "makes the plaintiff the master of the claim." *Caterpillar*, 482 U.S. at 392. Absent some other ground of federal jurisdiction (such as diversity of citizenship), the "plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Id.* at 399. And "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Ibid.* (emphasis omitted). Thus, "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if

9

the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393.

b. This Court has articulated two tests for determining when a "plaintiff's statement of his own cause of action," *Mottley*, 211 U.S. at 152, presents a federal question. Neither test is satisfied here.

*First*, and most significantly, federal-question jurisdiction may exist if the plaintiff's own statement of the claim establishes that "federal law creates the cause of action asserted." *Gunn* v. *Minton*, 568 U.S. 251, 257 (2013); see *Franchise Tax Bd.* v. *Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983) (similar). "As a rule of inclusion, this 'creation' test admits of only extremely rare exceptions and accounts for the vast bulk of suits that arise under federal law." *Gunn*, 568 U.S. at 257 (citation omitted). Here, the creation test is not satisfied because the complaint "on its face pleads only state law claims." Pet. App. 76a.

*Second*, even when "a claim finds its origins" in state law, *Gunn*, 568 U.S. at 258, federal-question jurisdiction may exist if a "federal issue" is "embedded" within the plaintiff's own statement of the claim, *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). In *Grable*, this Court described the relevant inquiry as whether "the state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Ibid.*; see *Franchise Tax Bd.*, 463 U.S. at 27-28 (articulating the test as whether the "well-pleaded complaint establishes" that "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law").

That test is not satisfied here because no federal issue is "embedded" within respondents' *own* articulation of their claims. *Grable*, 545 U.S. at 314. None of respondents' claims, as pleaded in the complaint, "rises or falls on [respondents'] ability to prove the violation of a federal duty." *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Manning*, 578 U.S. 374, 383 (2016). Nor do any of respondents' claims, as pleaded in the complaint, have "as an element any aspect of federal law." Pet. App. 84a. This case thus differs from *Grable*, in which "the meaning of [a] federal statute" was "an essential element" of the "quiet title claim" that the plaintiff had pleaded. 545 U.S. at 315. This case also differs from *Smith* v. *Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), in which it "appear[ed] from the bill or statement of the plaintiff" that his state-law claim "depend[ed] upon the construction or application of the Constitution." *Id.* at 199; see *id.* at 201-202; *Grable*, 545 U.S. at 312-313.

In their reply brief, petitioners contend that the *Grable* test is satisfied here "because 'federal common law supplies the rule of decision for respondents' claims.'" Cert. Reply Br. 6 (brackets and citation omitted). But the court of appeals found that petitioners had "waived" any "'federal-common-law argument under the *Grable* framework,'" and it therefore "decline[d] to consider *Grable* jurisdiction as it relates to the federal common law" in this case. Pet. App. 33a n.6 (citation omitted). In any event, no issue of federal common law appears in respondents' *own* "statement" of their claims, as *Grable* and the well-pleaded complaint rule require. *Mottley*, 211 U.S. at 152; see *Grable*, 545 U.S. at 314 (requiring a "stated federal issue"); *id.* at 315 (noting that the resolution of a federal-law question was "an essential element of [the plaintiff's] quiet title claim"). Thus, even if

11

petitioners' *Grable* argument had been properly preserved, that argument lacks merit.

### 2. *No exception to the well-pleaded complaint rule applies here*

Because respondents' complaint does not present a federal question under the well-pleaded complaint rule, this case may be removed to federal court only if an "exception" to that rule applies. *Aetna Health Inc.* v. *Davila*, 542 U.S. 200, 207 (2004). A federal court "may uphold removal even though no federal question appears on the face of the plaintiff's complaint" if the court concludes that the plaintiff "has 'artfully pleaded' claims" by "'omitting to plead necessary federal questions.'" *Rivet* v. *Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Franchise Tax Bd.*, 463 U.S. at 22). Petitioners contend that respondents have engaged in artful pleading here by putting a state-law label on claims that are "necessarily and exclusively governed by federal common law." Pet. 27; see Pet. 27-28. But far from providing the exclusive remedy for claims concerning climate change or greenhouse-gas emissions, any relevant federal common law has been displaced by the Clean Air Act. And even if the Act preempts particular state-law causes of action in this sphere, such preemption would simply be a federal defense that provides no basis for removal.

a. Far from "necessarily and exclusively govern[ing]" respondents' claims (Pet. 27), any federal common law with respect to those claims has been displaced by Congress. "Legislative displacement of federal common law does not require the 'same sort of evidence of a clear and manifest congressional purpose' demanded for preemption of state law." *American Elec. Power Co.* v. *Connecticut*, 564 U.S. 410, 423 (2011) (*AEP*) (brackets

12

and citation omitted). "The test for whether congressional legislation excludes the declaration of federal common law is simply whether the statute 'speaks directly to the question' at issue." *Id.* at 424 (brackets and citation omitted). Applying that test in *AEP*, this Court held that "the Clean Air Act and the EPA actions it authorizes displace any federal common-law right to seek abatement of carbon-dioxide emissions from fossil-fuel fired powerplants." *Ibid.*

Relying on *AEP*, the court of appeals in this case correctly held that the Clean Air Act likewise displaces any relevant federal common law here. See Pet. App. 24a-31a. Petitioners do not challenge that holding in this Court. See Pet. 26; Cert. Reply Br. 7. Indeed, petitioners below characterized respondents' claims as "based on interstate and international emissions of greenhouse gases," Pet. C.A. Br. 23, and argued that the Clean Air Act "outlines specific and exclusive procedures for parties—including state and local governments—to challenge nationwide emissions standards in federal court," *id.* at 35. See, *e.g.*, D. Ct. Doc. 1, at 4 (arguing that respondents' claims "are completely preempted by the Clean Air Act, which provides an exclusive federal remedy for plaintiffs seeking stricter regulation of the greenhouse gas emissions challenged in this action"); *id.* at 13 (arguing that "the Clean Air Act provides the exclusive cause of action for challenging the regulation of nationwide emissions").

Thus, as this case comes to the Court, the Clean Air Act's displacement of any relevant federal common law is a given. That displacement forecloses petitioners' current theory (Pet. 27) that federal common law "necessarily and exclusively govern[s]" respondents' claims. Petitioners' reliance on the artful-pleading doctrine rests

13

on the assertion that respondents' claims are "really" claims of federal common law, not of state law. *Franchise Tax Bd.*, 463 U.S. at 13. But respondents' claims cannot be federal-common-law claims "in substance" if Congress has displaced that body of federal law. *Id.* at 22; see *Merrell Dow Pharms. Inc.* v. *Thompson*, 478 U.S. 804, 814 (1986) (considering Congress's determination to "preclude" certain federal "remedies" in deciding whether a state-law claim arose under federal law).[2]

Petitioners further contend (Pet. 27) that the Clean Air Act's displacement of federal common law necessarily means that respondents' state-law claims are not "viable." But this Court has repeatedly distinguished the issue of "whether federal legislation has supplanted federal common law" from the issue of "whether state law is also available." *City of Milwaukee* v. *Illinois*, 451 U.S. 304, 310 n.4 (1981) (*Milwaukee*); see *id.* at 319 n.14 (describing the issue before the Court in that water-pollution case as "which branch of the Federal Government is the source of federal law, not whether that law pre-empts state law"); *AEP*, 564 U.S. at 429 (distinguishing the Clean Air Act's "displace[ment]" of "federal common law" from the "availability *vel non* of a state lawsuit"); *International Paper Co.* v. *Ouellette*, 479 U.S. 481, 489 (1987) (explaining that the Court in *Milwaukee* had "held that federal legislation now occupied the field, pre-

---

[2] This Court's decision in *Oneida Indian Nation of New York* v. *County of Oneida*, 414 U.S. 661 (1974), is not to the contrary. The passage from that decision on which petitioners rely (Pet. 26; Cert. Reply Br. 7) stands only for the unremarkable proposition that a claim arising under federal law may fail on the merits. See *Oneida Indian Nation*, 414 U.S. at 675-676 (explaining that a "claim may fail at a later stage for a variety of reasons," even if it is based on a right "claimed to arise under federal law in the first instance").

14

empting all *federal* common law," but had left "open the question of whether injured parties still had a cause of action under *state* law"). Now that the Clean Air Act has displaced the prior federal-common-law regime, the determination whether respondents' state-law claims can go forward will turn at least in part on the Act's preemptive effect. But however that preemption issue is ultimately resolved, petitioners' assertion of an ordinary-preemption defense cannot provide a basis for removal of the suit to federal court. See *Caterpillar*, 482 U.S. at 393.

This Court's decision in *Ouellette* illustrates the application of ordinary-preemption principles in determining the viability of state-law claims following a federal statute's displacement of federal common law. The Court in *Ouellette* held that the Clean Water Act (CWA) preempted the application of Vermont common law when a New York point source discharged effluents into Lake Champlain, causing ultimate harm in Vermont. See 479 U.S. at 483-484, 491-494. The Court further concluded, however, that the CWA would not bar claims brought under the law of the *source* State. See *id*. at 497, 498-499. The Court explained that disputes concerning interstate water pollution had previously been governed by federal common law, but that the CWA had displaced that prior regime. See *id*. at 487-489. In addressing the extent to which *state* common-law claims were cognizable after the CWA's enactment, the *Ouellette* Court treated the issue before it as solely one of CWA preemption, to be addressed in light of CWA provisions that "specifically preserve[d] [certain] state actions" and "allow[ed] source States to impose stricter standards." *Id.* at 497, 499. The Court did not suggest that the prior federal-common-law regime had any bear-

15

ing on the extent to which state-law claims could go forward once that regime had been superseded by statute. The same approach is warranted here.[3]

b. In rare circumstances, "Congress may so completely pre-empt a particular area that any civil complaint raising" claims within that area "is necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63-64. But petitioners do not and could not plausibly argue that federal common law completely preempts respondents' claims. "Complete preemption is ultimately a matter of [c]ongressional intent." Pet. App. 89a; see, *e.g.*, *Empire Healthchoice Assurance, Inc.* v. *McVeigh*, 547 U.S. 677, 698 (2006) ("If Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear."); *Beneficial Nat'l Bank* v. *Anderson*, 539 U.S. 1, 9 (2003) (holding that "Congress intended" 12 U.S.C. 86 "to provide the exclusive cause of action for usury claims against national banks"); *Metropolitan Life*, 481 U.S. at 66 (holding that "Congress has clearly manifested an intent to make causes of action" within the scope of 29 U.S.C. 1132(a) "exclusive"). As explained above, far from expressing an intent that federal common law be given complete-preemptive force with respect to the sorts of claims that respondents allege, Congress *displaced* any federal-common-law remedy that respondents might otherwise have invoked.

---

[3] Although the suit in *Ouellette* was filed in state court and then removed to federal court, see 479 U.S. at 484, removal was based on diversity of citizenship, see J.A. at 46, *Ouellette*, *supra* (No. 85-1233) (citing 28 U.S.C. 1332(a)), not on any purportedly federal character of the plaintiffs' claims.

16

If any body of federal law could plausibly be thought to have complete-preemptive effect with respect to respondents' claims, it would be the federal law that *currently* governs greenhouse-gas emissions—principally, the Clean Air Act. But the court of appeals correctly held that the Act "does not completely preempt th[e] type of climate change action" brought by respondents in this case, Pet. App. 38a, and petitioners do not challenge that holding. If the *applicable* federal law in this area does not completely preempt respondents' claims, *superseded* federal law cannot plausibly be thought to have that effect.[4]

## B. The Decision Below Does Not Conflict With Any Decision Of Another Court Of Appeals

1. All five courts of appeals that have considered the question have held that state-law actions like respondents' are not removable to federal court. See Pet. App. 2a; *Rhode Island* v. *Shell Oil Prods. Co.*, 35 F.4th 44, 50-51 (1st Cir. 2022), petition for cert. pending, No. 22-524 (filed Dec. 2, 2022); *City of Hoboken* v. *Chevron Corp.*, 45 F.4th 699, 706 (3d Cir. 2022), petition for cert. pend-

---

[4] The court of appeals in this case did not resolve whether respondents' claims would have been encompassed by the "pre-*AEP* federal common law of transboundary pollution" if that body of law had not been displaced by the Clean Air Act. Pet. App. 29a n.5. In that regard, the court identified two issues that this Court's precedents had left "unsettled": (1) whether local governmental entities like respondents may invoke the federal common law of transboundary pollution; and (2) whether that body of federal common law "covers suits brought against product sellers rather than emitters." *Ibid.* (citing *AEP*, 564 U.S. at 421-422); see p. 5 n.1, *supra*. Given the Clean Air Act's displacement of any relevant federal common law, it would be incongruous for the removability or viability of respondents' claims to depend on the resolution of such "academic" questions. *AEP*, 564 U.S. at 423.

17

ing, No. 22-821 (filed Feb. 27, 2023); *Mayor & City Council of Baltimore* v. *BP p.l.c.*, 31 F.4th 178, 195 (4th Cir. 2022), petition for cert. pending, No. 22-361 (filed Oct. 14, 2022); *City & County of Honolulu* v. *Sunoco LP*, 39 F.4th 1101, 1106 (9th Cir. 2022), petition for cert. pending, No. 22-523 (filed Dec. 2, 2022); *County of San Mateo* v. *Chevron Corp.*, 32 F.4th 733, 744 (9th Cir. 2022), petition for cert. pending, No. 22-495 (filed Nov. 22, 2022); *City of Oakland* v. *BP PLC*, 969 F.3d 895, 901 (9th Cir. 2020), cert. denied, 141 S. Ct. 2776 (2021).

Like the Tenth Circuit in this case, the First, Third, Fourth, and Ninth Circuits have specifically rejected the contention that federal common law provides a basis for removal. See Pet. App. 24a-33a; *Rhode Island*, 35 F.4th at 53-56; *Hoboken*, 45 F.4th at 707-709; *Baltimore*, 31 F.4th at 199-208; *San Mateo*, 32 F.4th at 746-748; *Oakland*, 969 F.3d at 906-908.

2. Petitioners contend (Pet. 11-24) that the decision below conflicts with decisions of the Second, Fifth, and Eighth Circuits. That argument is mistaken.

a. *City of New York* v. *Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021), involved a district-court suit brought by the City of New York against various energy companies. *Id.* at 88. The City alleged only state-law claims but invoked the district court's diversity jurisdiction under 28 U.S.C. 1332. See Am. Compl. ¶¶ 48, 132-153, *City of New York* v. *BP p.l.c.*, 325 F. Supp. 3d 466 (S.D.N.Y. 2018) (No. 18-cv-182). The district court dismissed the City's claims, and the Second Circuit affirmed. See *New York*, 993 F.3d at 86. Contrary to petitioners' contentions (*e.g.*, Pet. 14), nothing in the Second Circuit's decision conflicts with the court of appeals' decision in this case.

18

i. The Second Circuit expressed no view on the question whether the purportedly federal character of claims like respondents' could provide a basis for removal to federal court. That question was not presented in *New York* because (as noted above) the suit was commenced in federal court and diversity of citizenship provided an independent basis for federal jurisdiction. See Pet. 14-15. The Second Circuit explained that its affirmance of the district court's order dismissing the state-law claims on the merits reflected its consideration of the defendants' "preemption defense on its own terms, not under the heightened standard unique to the removability inquiry." *New York*, 993 F.3d at 94. The court specifically reserved judgment on whether "federal preemption [would] give rise to a federal question for purposes of removal." *Ibid.* The court of appeals' decision in this case, by contrast, arose "in the removal context" and did not address any matter of "*ordinary* preemption." Pet. App. 33a.

ii. Petitioners allege (Pet. 14) a conflict between the Tenth Circuit's statement that federal common law "no longer exists" in this area, Pet. App. 29a (emphasis omitted), and the Second Circuit's statement that "the City's claims must be brought under federal common law," *New York*, 993 F.3d at 95. But while that language viewed in isolation might suggest that federal common law continues to govern in this area, the very next sentence of the Second Circuit's opinion recognized that "the Clean Air Act displaces federal common law claims concerned with domestic greenhouse gas emissions." *Ibid.* (footnote omitted); see *id.* at 99 (describing the domestic-emissions issue as "a question previously governed by federal common law"). Petitioners therefore are wrong in asserting (Cert. Reply Br. 2) that the cir-

19

cuits are divided on whether "federal common law nec-
essarily and exclusively governs claims seeking redress
for [climate-change-related] injuries."

iii. Although the Second Circuit recognized that
claims premised on domestic emissions are no longer
*governed* by federal common law, the court viewed the
*prior* applicability of federal common law as relevant in
determining the post-Clean Air Act viability of state-
law claims. See *New York*, 993 F.3d at 95 n.7 (noting the
City's argument that "some residual state-law claims
remain" cognizable, and stating that "the extent to which
that is true hinges, at least in part, on whether federal
common law would govern the [domestic-emissions] is-
sue in the absence of the Clean Air Act"); *id*. at 99. But
nothing in the Tenth Circuit's decision here conflicts
with that analysis, since the Tenth Circuit did not ad-
dress whether the Clean Air Act authorized or pre-
empted respondents' claims. Indeed, it would have been
inappropriate for the Tenth Circuit to opine on the
proper way of conducting that merits inquiry in a case
where that court held that the district court lacked
subject-matter jurisdiction. Rather, the Tenth Circuit
addressed the Clean Air Act only in discussing federal-
common-law displacement and complete preemption.
See Pet. App. 27a-31a, 34a-38a.

iv. The Second Circuit's decision thus does not con-
flict with the decision below. Indeed, both the Second
Circuit and the court of appeals in this case have dis-
claimed the existence of any conflict, based on the dis-
tinction between removability and ordinary preemp-
tion. See *New York*, 993 F.3d at 93-94; Pet. App. 32a-
33a. And other circuits that have rejected attempts to
remove similar state-law actions likewise see no conflict
with the Second Circuit's decision. See *Rhode Island*,

35 F.4th at 55; *Hoboken*, 45 F.4th at 708; *Baltimore*, 31 F.4th at 203.

b. Petitioners are likewise wrong in asserting (Pet. 18-19) that the court of appeals' decision in this case conflicts with the Eighth Circuit's decision in *In re Otter Tail Power Co.*, 116 F.3d 1207 (1997). The Eighth Circuit stated that federal-question jurisdiction exists when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 1213 (citation omitted). The second of those two tests is the one that this Court later clarified in *Grable*. See p. 9, *supra*. The Eighth Circuit found that test satisfied in *Otter Tail*, explaining that the plaintiff's complaint was "specifically premised" on the defendant's "alleged deviation" from a previous court order, 116 F.3d at 1213, which in turn had resolved a "federal question" concerning "Tribal regulatory authority," *id.* at 1214.

Petitioners assert (Pet. 18) that the Eighth Circuit "squarely held that a district court has jurisdiction under Section 1331 over claims artfully pleaded under state law but necessarily governed by federal common law." But that characterization of the Eighth Circuit's rationale finds no support in the decision itself. The Eighth Circuit's decision rested not on the artful-pleading doctrine, but on the allegations actually set forth in the plaintiff's complaint. See *Otter Tail*, 116 F.3d at 1213 (identifying the "well-pleaded complaint" rule as the governing legal principle); *id*. at 1214 (concluding that the complaint in that case "necessarily present[ed] a federal question"). And the Eighth Circuit's determination that those particular allegations satisfied the pre-*Grable* test does not conflict with the decision below,

21

which found that petitioners had "waived" any "'federal-common-law argument under the *Grable* framework.'" Pet. App. 33a n.6 (citation omitted).

c. Petitioners' reliance (Pet. 19-20) on the Fifth Circuit's decision in *Sam L. Majors Jewelers* v. *ABX, Inc.*, 117 F.3d 922 (1997), is also misplaced. That case involved a suit against an airline for the value of packages that the airline had lost. *Id.* at 923. The Fifth Circuit recognized that "[f]ederal jurisdiction exists when a federal question is presented on the face of a plaintiff's properly pleaded complaint." *Id.* at 924. The Fifth Circuit held that the plaintiff's "claim raise[d] federal question jurisdiction based on the federal common law that controls an action seeking to recover damages against an airline for lost or damaged shipments." *Id.* at 923. The court further observed that, although "the airline industry ha[d] been substantially deregulated" through federal legislation, one such deregulatory statute had "include[d] a provision * * * preserving federal common law actions." *Id.* at 928-929.

Petitioners characterize (Pet. 18) the Fifth Circuit's decision as "squarely" holding that a district court has jurisdiction "over claims artfully pleaded under state law but necessarily governed by federal law." But the Fifth Circuit framed its ruling as an application of the well-pleaded complaint rule, not of the artful-pleading doctrine. *Majors*, 117 F.3d at 924. The court also emphasized that its "holding" was "necessarily limited" by the circumstances of that case—namely, "the historical availability" of a federal-common-law remedy against interstate air carriers for lost or damaged goods and "the statutory preservation of the remedy." *Id.* at 929 n.16. The Fifth Circuit's reliance on "the statutory preservation of the" applicable federal-common-law remedy, *ibid.*,

22

further distinguishes *Majors* from this case, in which the Tenth Circuit emphasized that the Clean Air Act has displaced any relevant federal common law but has preserved certain state-law claims, Pet. App. 27a-30a, 35a. Accordingly, there is no sound reason to believe that the Fifth Circuit would reach a different conclusion than the Tenth Circuit in the circumstances of this case.

**CONCLUSION**

The petition for a writ of certiorari should be denied.

Respectfully submitted.

ELIZABETH B. PRELOGAR
  *Solicitor General*
TODD KIM
  *Assistant Attorney General*
MALCOLM L. STEWART
  *Deputy Solicitor General*
FREDERICK LIU
  *Assistant to the Solicitor
    General*
AMANDA LEITER
  *Senior Counsel to the
    Assistant Attorney General*
CHRISTINE ENNIS
  *Attorney*

MARCH 2023